14240

SCOTT v. INTERNATIONAL AGR. CORPORATION

(184 S. E., 133)

May, 1935.

*Messrs. Osborne & Butler,* for appellant,

*Messrs. Lanham & Lanham,* for respondent, 

February 27, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is a suit in tort for injuries alleged to have been suffered by respondent while in the employ of appellant, and praying for actual damages $1,000.00 and punitive damages $1,000.00, resulting in a verdict for plaintiff-respondent against defendant-appellant in the sum of $500.00 actual, and $500.00 punitive damages.

The second, third, and fourth paragraphs of the complaint are as follows:

"Second: That on September 10, 1934, the plaintiff was in the employ of the defendant as a common laborer, and that his task was to help handle a hand-car and help load the

same, which car was used in transporting various amounts of fertilizer, sometimes as much as two tons, from one place about the establishment to another. That the said car in its usual use was conveyed from one point to another on a pair of steel rails, and that in order to transfer the car from one track to another, it is necessary to use a certain turn-table which was built and put in use by defendant company, and which, at the times hereinafter mentioned, was in a very bad state of repair.

"Third. That on the said day, September 10, 1934, the plaintiff, while pursuing the usual duties of his particular job, along with another laborer, was instructed by his immediate superior and foreman to transfer this said car, which was loaded to half its capacity, from one track to another; that they were directed to make this transfer by a use of the turn-table. That the turn-table had been in a bad state of repair for at least one year, in that it required very great effort to operate it and to turn it, in order that a car might be conveyed from any one of the tracks to the turn-table itself. That it should have been in a condition that would not require such effort; that it should have been on easily moveable bearings and wheels and pinions, but that the defendant company had allowed it to deteriorate into such a bad state of repair that it had to be lifted by several employees in order to revolve it. That the under gear of the said turn-table was worn out and dilapidated, all of which was known to the defendant company. That the Company was notified time after time by the plaintiff and other employees of the unsound and deteriorated condition of the turn-table, through its superintendent and various foremen, but that up until the time the injury happened to the plaintiff the said turn-table was never repaired and put in good condition.

"Fourth. That on this particular day, September 10, 1934, the plaintiff and another co-laborer, acting under instructions from their immediate superior, were attempting to transfer the car from one of the tracks to the turn-table, when the said car, which was loaded with approximately one

ton of fertilizer, jumped the track and ran into the plaintiff, pinning him helplessly between the car itself and the wall; that plaintiff, thus pinned between the car and the wall, was unable to free himself, and that he stayed in such a condition until numerous other employees went to his aid and rescue and finally succeeded in dragging the car back and extricating the plaintiff from his position."

The seventh paragraph contained appropriate allegations based on the same delicts for punitive damages.

Appellant's answer admitted that respondent was in its employ on September 10, 1934, as a common laborer, "and that among other duties, he was required to handle certain hand-cars and help in the loading and unloading, the same operating on steel rails, and that there are certain turntables in defendant's plant."And further admitted that respondent on said date received some minor injuries and was treated therefor once by a physician, but denied all other material allegations of the complaint.

For a second defense pleaded contributory negligence, and for a third defense: "8. While denying that there were any defects or dangers incident to the work in which plaintiff was engaged, defendant nevertheless alleges that even if there were any such defects or dangers, the same were such as were ordinarily incident to the work in which plaintiff was engaged, or were such as were open, obvious, and known to plaintiff, or by the exercise of ordinary prudence and caution should have been known to him, or were due to negligence of a fellow servant, and the plaintiff, by continuing in his employment and conducting himself in the manner in which he did, assumed the risks thereof."

Appellant's first exception alleges error on the part of the trial Judge in allowing respondent to contradict a witness, Horace Artison, who had been placed upon the stand as a witness for respondent. Respondent was permitted by the trial Judge, over the objection of appellant's attorney, to testify as to what his said witness, Horace Artison, had stated to respondent and respondent's counsel

prior to going upon the witness stand as respondent's witness, which was in contradiction of what the witness had stated when on the witness stand. At the time Artison was testifying, there was no intimation on the part of respondent's counsel that he had been taken by surprise, and no request had been made by him to cross examine the witness Artison. We think the trial Judge was clearly in error in permitting respondent to directly contradict his own witness. The rule governing the examination of a hostile witness is well stated in *State v. McKay,* 89 S. C., 234, 71 S. E., 858, and is as follows: "The rule is that the court may, in its discretion, allow a party to propound leading questions to his own witness for the reason, among others, that the witness is hostile to him. While a party is not concluded by the testimony given by his own witness, but may prove the facts to be other than as testified to by such witness, he is not permitted to impeach the credibility of his own witness either by testimony as to his general character, or by contradicting him; that is, by proving that, on some other occasion, he made inconsistent statements. *State v. Johnson,* 43 S. C. [123], 126, 20 S. E., 988; *Bauskett v. Keitt,* 22 S. C. [187], 199, and cases cited."

This exception must be sustained.

Appellant's Exceptions 4 and 9 charge error; 4 in refusing to grant appellant's motion for nonsuit on the ground that the plaintiff assumed the risk involved and that the evidence was susceptible of no other reasonable inference, but that if a risk existed it was known to and appreciated by the plaintiff, and he had proceeded with full knowledge of the danger and likelihood of injury to himself, and 9 alleged error in not sustaining the appellant's motion for a direction of verdict on the same grounds as its motion for nonsuit.

An employee assumes all of the ordinary risks of his employment; that is to say, he assumes the risk of all dangers ordinarily incident to that employment. He does not, however, assume the risk of extraordinary dangers or dangers caused by the negligence of the employer

or its agents and servants, unless those dangers are known to him and appreciated by him, or by the exercise of ordinary care would become known to him and appreciated by him, whether ordinary, extraordinary or however caused. We deem it unnecessary to cite authority for the foregoing statement of the law in this State regarding assumption of risk by an employee.

We will advert to a further principle of law in connection with assumption of risk. There are certain exceptions. If there is an emergency; if there is a complaint and promise of correction; if the employee acts under the coercion of legal penalties; or if there is a basis for an honest difference of opinion as to safety in using the instrument furnished by the master, or of the manner in performing the work, and the servant surrenders his judgment of unsafety in reliance on the master's superior judgment.

Assumption of risk is peculiarly a question for the jury, and only in very rare cases should a trial Judge direct a nonsuit or direct a verdict in favor of a defendant on this ground, but there are rare cases in which this should be done. See case of *McKinney v. Woodside Cotton Mills,* 167 S. C., 438, 166 S. E., 499.

We will not discuss the testimony for the reason that having already sustained the appellant's first exception, the case must go back for a new trial.

Mr. Justice Bonham and the writer hereof, are of the opinion that said Exceptions 4 and 9 should be sustained, but the other members of the Court are of a contrary opinion, and therefore these exceptions are overruled.

Exceptions 5 and 10 charge error on the part of the trial Judge in not sustaining appellant's motion for a nonsuit and for directed verdict on the ground that the respondent's injuries were due to the negligence of a fellow servant, which negligence the respondent assumed.

The respondent, in his testimony, was very emphatic that his injury was due to the negligence of Horace Artison, who was assisting him and who was a fellow servant, but also testified that even if Horace Artison "had done it right" he would have been injured, and the fellow servant, Horace Artison, had given another reason for the truck or car rolling back on respondent and injuring him.

Under these circumstances, it became a question for the jury as to whether respondent was injured through the negligence of a fellow servant. Therefore, said Exceptions 5 and 10 are overruled.

Exceptions 6, 7, 17, and 18 all relate to alleged misconduct on the part of respondent's counsel in the conduct of the case on trial, in persisting in attempting to get in evidence inadmissible testimony; in asking the witness, Gyp Pruitt, while on cross examination, if he did not know that perjury means to swear to a lie; in repeated reference in argument to another case against appellant; and in stating to the jury if appellant's counsel had so much confidence in them, why did he move so strenuously for a directed verdict.

As this case is being remanded for a new trial, we will not pass directly upon these exceptions, but would suggest that it is always the better policy for counsel to so conduct cases that they may not be placed in the position of having resorted to unfair tactics or the appearance of unfair tactics. In the heat of trial, many a statement is unintentionally made, but its effect on the jury is as prejudicial as if intentional, and when the trial Judge fails to do that which is necessary to adequately remedy the damage thus wrought, even to declaring a mistrial or granting a new trial, dependent upon the circumstances, this Court will undertake to furnish relief by the granting of a new trial.

We deem it unnecessary to pass upon or refer to the other exceptions.

Reversed, and remanded for a new trial.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Carter dissents.

Mr. Justice Carter (dissenting): We are unable to agree with the conclusion reached in the leading opinion regarding appellant's first exception, reading as follows:

## "Exception 1

"Error in permitting plaintiff to contradict his witness Horace Artison by allowing the following while the plaintiff was being examined by his counsel:

"Q. Mr. Butler asked you what Horace said when I talked to him and to you. I will get you to tell me. Mr. Butler asked if Horace said on the stand just what he told you and me awhile ago. What did Horace say in the room about lifting up trucks before this? Do not answer until the Court tells you to.

"Mr. Butler: I object to contradicting a witness. It is improper and incompetent.

"The Court: Go ahead and answer.

"Q. What did he say to me about cars having to be lifted? A. He said he had helped lift them.

"Q. What did he say in yonder? A. The same thing.

"The error being that it was improper and incompetent for the plaintiff to contradict his own witness, there having been no ground for such contradiction, while the witness Horace Artison was on the stand, nor any evidence that such witness had taken plaintiff's counsel by surprise, which would justify the cross examination of such witness, and that being the only method by which the witness may be contradicted, it was error to permit plaintiff to offer such contradiction otherwise."

The question asked the plaintiff by his counsel, concerning which complaint is now made, was asked on redirect examination of the plaintiff following the cross examination of him by counsel for the defendant, and was caused by the

questions propounded to the plaintiff on the cross examination by counsel for the defendant. In this connection, it is well to refer to certain questions asked the plaintiff by counsel for the defendant during the cross examination, as follows:

"Q. Did you say anything to Mr. Hattaway on the platform? A. Yes, sir.

"Q. Was Horace there? A. Yes, sir.

"Q. What did Mr. Hattaway say? A. Said to go and lift it around.

"Q. And then you went upstairs, and when you got up there you hollered back to Mr. Hattaway and told him that the table was stuck and would not turn, and he hollered back and told you to pick it up and turn it. Was Horace there? A. He was gone to get water.

"Q. Did you hear him testify that he was there all the time and did not hear anything about it being stuck? A. I heard him testify that.

"Q. You put him on the stand. You want the jury to believe him? A. He did not tell the truth.

"Q. You want us to understand that Horace was wrong? A. He was wrong.

"Q. Did you hear Horace testify that when you rolled the car on the table that you were the one that suggested that you pick it up and he had never done it before? A. Yes, sir.

"Q. You want us to understand that is wrong? A. That is wrong.

"Q. Horace was there all the time. He knows as much as you do? A. I suppose so.

"Q. If there was any hollering, he could have heard it? A. He did hear it.

"Q. You heard him testify that he did not? A. Yes, sir.

"Q. Do you know if Horace talked to Mr. Lanham before he went on the stand? A. Yes, sir.

"Q. Were you with him? A. Yes, sir. He talked to me and Horace.

"Q. And Horace told you the same thing he said on the witness stand? A. No, he did not.

"Q. So you do not want to stand by Horace? A. He did not tell the truth.

"Q. So Horace, before you got around and when you got on the frame, Horace snatched it up and it rolled on you? A. I was right behind it."

The answer to the question about which appellant now complains, given by the plaintiff, was, in effect, the same in meaning and substance as the answers given by the plaintiff to questions propounded by counsel for the defendant during his cross examination of the plaintiff. Under our view, this affords no basis for a reversal.

Under my view of the case, the judgment of the lower Court should be affirmed.