### 14444

BLALOCK v. GRANITEVILLE MFG. CO.

(190 S. E., 709)

March, 1936.

*Messrs. Williams & Busbee,* for appellant,

Messrs. *Hendersons & Salley,* for respondent,

March 2, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

On the night of October 20, 1933, appellant was working on the second floor of the Vaucluse plant of the Graniteville Manufacturing Company, situate in Aiken County, and engaged in running a set of speeders. He was a mill operative of long experience, having commenced to work in a cotton mill when he was nine years old, and at the time of his alleged injury was 57. He had worked at this same mill for 30 years, in the same roof for 15 or 16 years, and had been working in the same room and on the same machinery continuously for seven or eight months before the accident. The room in which appellant was working measured about 300 x 125 feet, 300 feet on its north and south lines and 125 feet on its east and west lines. The speeders that appellant was working on were in the extreme southwestern corner of the room, and in operating these speeders he used alleys 1, 2 and 3. Appellant's coat and hat were hanging on a post near the western wall of the building, but in the fifth alley. The water house is halfway the length of the long room, about 150 feet from the corner in which appellant was operating, and on the southern side of the room. There

are steps leading down from this room in the extreme northeastern and northwestern corners, which steps were used by all operatives in going to and coming from their work. Appellant customarily used the steps in the northeastern corner of the room, because those steps and the exit that they led to were nearest his home.

The testimony shows that appellant knew that in order to get grease and oil off of the floor it was necessary to scour this room at least once a week, and that the regular time for scouring the floor was every Friday afternoon; that he had frequently seen it done, and had taken part in the scouring process in order to make the time, and that he knew that the floor was scoured with soapy water. He also testified that so far as he knew nothing else was used but soap and water, and that if soapy water is put on the floor that it would make the floor slippery. Appellant further testified that according to custom the scouring on the afternoon in question commenced at 3 o'clock, which was in accordance with the custom in the mill.

On the night appellant was injured he and Mrs. Myrtis Hancock were the last operatives to quit work, Mrs. Hancock completing her work a few minutes ahead of appellant, and left the mill walking in safety over the floor that had been scoured. Appellant worked until 9 o'clock, and then proceeded to the water house to "wash up" before leaving the building. The floor of the entire room had been scoured except around the place where Mrs. Hancock and appellant were working, and those engaged in the work of scouring the floor had to wait for a period of 30 minutes until appellant stopped work before completing the scouring of the room, that is, scouring the place where appellant was working, the balance of the room having already been scoured. As aforesaid, the entire room had been completely scoured except the small area in the extreme southwestern corner of the room where appellant was operating or working at two speeder machines, and the three alleys in which he worked.

Upon appellant knocking off from work he went to the water house and washed up, which consumed from five to fifteen minutes. While he was in the washroom those engaged in scouring the floor applied water and soap to the area in which appellant had been working, and when he came out of the washroom soapy water was on the floor of this area, and as described by appellant, he was met at the door of the water house by the scourers. When appellant left the water house he started back over to where he had been working for the purpose of getting his coat and hat preparatory to leaving the building for the night, and as he was walking down alley 3 to go around to alley 5 to get his coat and hat, just before emerging from the western end of alley 3, he slipped on the wet and soapy floor, falling against some machinery, receiving injuries, for which this suit is brought. A more direct route from the water house to where appellant's coat and hat were hanging would have been to proceed to alley 5 and then up that alley direct to his coat and hat, which alley had been scrubbed from 35 to 45 minutes prior to the time appellant suffered his fall, and therefore was not as slippery as the alley which appellant chose to travel.

Appellant alleged in his complaint praying for actual and punitive damages, that he was an employee of respondent in the capacity as a slubber and speeder hand, and on the night of October 20, 1933 (Friday night), being engaged on piecework, he was instructed to knock off at nine o'clock, which he did, going to the water house to clean up, the water house having been constructed and supplied to the employees of respondent for the purpose of washing and cleaning up themselves after finishing work; that while he was gone and in the water house and before he could clean up and return for his coat and hat, soapy water had been spread upon the floor at the place he had been working and it was necessary for him to walk over said place, where he became injured, in order to get his coat and hat to leave

the mill; that it was the duty of respondent to furnish appellant a safe place to work and to walk in getting his coat and hat to leave the building, but in walking over the wet soapy floor upon his return from the water house, on account of the condition of the floor, he was caused to lose his footing, falling against the speeder frame, causing him great physical and mental pain and injury to his back, etc.

Paragraph 9 of appellant's complaint is as follows: "9. That plaintiff's injury was due to the negligence, wantonness, willfulness and recklessness on the part of the defendant, its agents and representatives, in requiring slippery, soapy water to be spread upon the floor where he was doing his work, and in compelling plaintiff to walk over the same in order to perform his duties in the mill; and defendant and its said agents and representatives in charge thereof were guilty of negligence, willfulness, wantonness and recklessness in not promulgating and enforcing reasonable rules and regulations so as to prevent the spreading of slippery, soapy water upon the floor where plaintiff had to do his work and to prevent doing so at a time when plaintiff had to perform his duties to defendant by walking upon said floor, all of which resulted in his injury as aforesaid, which injury plaintiff verily believes to be permanent, all to his great damage. * * * "

The answer of respondent was a general denial, even as to appellant receiving the injuries alleged; and then the defenses of assumption of risk and contributory negligence.

Upon the facts as developed at the trial as set out herein, the trial Judge, at the conclusion of the testimony offered by appellant, granted a motion of the respondent for a nonsuit upon the following grounds, to wit:

"1. That no actionable negligence nor wilfulness nor wantonness on the part of the defendant has been shown.

"2. That the only inference to be drawn from the testimony is that, if plaintiff was injured in the manner described by him, that he was injured from a risk of his employment assumed by him, the risk and danger of which

were obvious and apparent, or would have been to an ordinarily prudent person.

"That the risk was an ordinary one, but if it be construed to be an extraordinary one, no other inference can be drawn from the testimony than that the plaintiff was familiar with the routine of washing the floor, worked in accordance with it, and knew and appreciated, as a person of ordinary care and prudence, the risk and danger, which were open and obvious; and with this knowledge, he continued his work and voluntarily accepted the risk.

"3. That the only inference that can be drawn from the testimony is that plaintiff was guilty of contributory neggence, wilfullness and wantonness."

stating that he was granting the motion on the authority of the case of *Meyer v. Gulf Refining Company*, the opinion in which case was filed on March 27, 1936. The *Meyer case* has since been reported, and is to be found in 179 S. C., 324, 184 S. E., 796.

The appellant comes to this Court on five exceptions, but No. 3 was abandoned, leaving therefore only four.

Appellant's Exception 1 "complains of the ruling that appellant could only ask if there were any rules governing the scouring of floors, when appellant was seeking to show that respondent could have made rules to prevent appellant's injury by providing a safe way to scour the floors while appellant and others were working"; and Exception 2 "complains of error in excluding testimony to show that it is customary and proper to put sand and soapy water when scouring the floor in a place where employees have to work."

Exceptions 4 and 5 complain of error in granting respondent's motion for a nonsuit.

Without passing upon Exceptions 1 and 2, this Court will consider the case as though it were in testimony that respondent could have made rules providing a safe way to scour floors while its employees were working, and that it is customary with other mills, and proper, to put sand in soapy water when scouring the floor in a place where em-

ployees have to work; and that respondent had no rule requiring the use of sand, and sand was not used.

Exceptions 4 and 5 will be discussed together.

The only difference between the case under consideration and that of *Meyer v. Gulf Refining Company, supra,* on which the trial Judge granted respondent's motion for a nonsuit, is that in the case under consideration the risk was extraordinary, and in the *Meyer case,* it was ordinary. In the *Meyer case,* the premises at the filling station were scoured every afternoon with powder and water, which, until becoming dry, made the premises slick and easy to slip upon, but this scouring took place when it was known that the employees working around the station would be compelled to go thereon for the purpose of servicing cars. In the present case the custom was to scour the room when the employees were not at work. In the particular instance, and before appellant returned from the washroom to get his coat and hat, soap and water had been applied to the area where he had been at work. In returning for his coat and hat, appellant walked up alley 3, where he had been at work, falling therein just before emerging therefrom near the west wall.

In *Tyner v. A. C. L. R. Co.,* 149 S. C., 89, 146 S. E., 663, 670, and quoted with approval in *Meyer v. Gulf Refining Co., supra,* it is stated: "The general rule is that the servant assumes such risks as are ordinarily incident to the service, but does not assume extraordinary risks unless they are known to and appreciated by him, or are so obvious that an ordinarily prudent person under the circumstances would have observed, and appreciated them."

In the case of *Scott v. International Agr. Corp.,* 180 S. C., 1, 184 S. E., 133, 135, and quoted with approval in *Hice v. Dobson Lumber Co.,* 180 S. C., 259, 185 S. E., 742, 745, this Court, in discussing assumption of risk, had this to say: "An employee assumes all of the ordinary risks of his employment; that is to say, he assumes the risk of all dangers ordinarily incident to that employment. He does

not, however, assume the risk of extraordinary dangers or dangers caused by the negligence of the employer or its agents and servants, unless those dangers are known to him and appreciated by him, or by the exercise of ordinary care would become known to him and appreciated by him, whether ordinary, extraordinary or however caused. We deem it unnecessary to cite authority for the foregoing statement of the law in this state regarding assumption of risk by an employee."

And again in the case of *Hice v. Dobson Lumber Co., supra,* and quoting with approval from the opinion in *James v. Manufacturing Co.,* 80 S. C., 232, 61 S. E., 391, a definition given of assumption of risk was as follows: " 'Assumption of risk rests in the law of contract, and involves an implied agreement by an employee to assume the risks ordinarily incident to his employment, or a waiver after a full knowledge of an extraordinary risk of his right to hold the employer for a breach of duty in this regard. *Bodie v. Charleston, etc., Ry. Co.,* 61 S. C., 468, 39 S. E., 715.' "

The testimony of appellant as hereinbefore set forth was that when he came from the washroom, the floor where he had been working, that is, alleys 1, 2 and 3, had soapy water thereon, had been freshly scoured; that he had never known anything else to be used in scouring the floors but soap and water; that he knew that the floor was thus made slippery and dangerous to walk upon. Yet he walked thereon when he could have more conveniently used alley 5, which had been scoured some 35 to 45 minutes prior thereto, and therefore safer to use. It is contended by appellant that the testimony permits of the interpretation that soapy water had been applied not only to the area where appellant had been at work, but had been spread upon the floor to the door of the washroom. This is immaterial, since it is not claimed that appellant was caused to fall and was thereby injured at any point other than the western end of alley 3.

It is significant that appellant did not slip or fall when he went into alley 5, where his coat and hat were hanging, and in proceeding from that point to the stairs in the extreme northeastern portion of the room.

Clearly, under the testimony, and the law of this State, appellant assumed the risk, unless he can bring himself within some one of the exceptions to the rule. This he undertakes to do by claiming an emergency.

In *Hice v. Dobson Lumber Co., supra,* it is stated:

"The meaning of emergency is given in Webster's New International Dictionary as 'an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency.'

"As applied to negligence cases, the rule is that when a servant is confronted by a serious danger and has not sufficient time to deliberate upon the comparative safety of alternative courses of action, and the alarm and nervous excitement produced by the situation impairs his reasoning faculties, he is not expected to act with that degree of prudence which would otherwise be obligatory; but the doctrine is not applicable unless the impairment of the servant's mental faculties is excusable under the circumstances, and to excuse acts done it must be made to appear, as a matter of fact, that danger was imminent and adequate to prevent the exercise of sound judgment. 3 Labbatt, Master & Servant (2d Ed.), § 1274; 20 R. C. L., page 135."

The testimony fails to show an emergency in contemplation of law.

The trial Judge could well have based the granting of respondent's motion for a nonsuit also on contributory negligence.

Affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER dissents.