14938

McCLAIN v. CHARLESTON & W. C. RY. CO.

(4 S. E. (2d), 280)

334

January, 1938.

*Messrs. Williams & Busbee,* for appellant,

*Messrs. M. G. McDonald* and *Gunter & Wilder,* for respondents,

August 29, 1939.

The opinion of the Court was delivered by MR. A. L. GASTON, ACTING ASSOCIATE JUSTICE.

This is an appeal from an order of nonsuit. Mrs. Lucile McClain was an employee of the defendant company as telegraph operator and railroad station agent from September 1, 1918, until she was laid off after her injury in January, 1937. She was injured on July 21, 1936, by a fall while in the act of crossing the tracks in the yard for the purpose of carrying out instructions of the dispatcher to stop the through freight at her station of Ellenton to pick up a very urgent shipment of fruit baskets or hampers to be rushed.

She was engaged in signalling the approaching train with the waybills in her hands. Her injuries were painful, requiring medical attention, and disabled her for some time. No issue arises on this appeal in this respect.

Her own statement of the manner in which the casualty came about fully sustains the complaint. The witness for the plaintiff testified along the same line.

The complaint alleges several acts of negligence as the proximate cause of the injury, to wit: (1) That she was in the performance of her duties, acting under orders, and hurriedly went out of the station; that it was necessary for her to cross the yard and side track, which she attempted to do in the usual manner at the customary place; that the place was unsafe; (2) that it is the statutory duty of defendant to keep the roadbed at said place level with the ties,

and to exercise care to provide a reasonably safe place for travel and work, and to construct and maintain the place of substantial ballast or solid earth, to pack the same, to remove any inequalities of surface from the station to the main line track; (3) that defendant failed to do its duty, and tore up the roadbed at this place, replaced the ties, and failed to cover with sufficient dirt to make it level, although it appeared to be safe, but had hidden soft spots beneath the surface with large rock hidden from view causing it to be dangerous to use or walk upon; (4) and failed to level the dirt with the top of the rails; (5) and failed to properly construct a safe place for her to work, failed to warn plaintiff of the hidden dangers, failed to promulgate rules for the proper construction of the station premises and failed to properly supervise and inspect the work.

The answer pleads a general denial, contributory willfulness and assumption of risk.

The pertinent rules of the defendant company were admitted in evidence.

The Act of Congress, known as the Federal Employers' Liability Act, 45 U. S. C. A., §§ 51-59, governs in this case. There are a vast number of decisions of the Courts construing this Act. The Act seeks to impose upon every common carrier by railroad, engaged in interstate commerce, liability in damages in behalf of any employee for injury resulting in whole or in part from the negligence of any officer, agent or employee of such carrier, or by reason of any defect or insufficiency due to its negligence, in its track, roadbed, etc.

The Congress intended this legislation to afford some degree of protection to the employee when injured by negligence, and soften the hardships of the common law, by humanizing the rules of law in respect to this class of labor. Consequently the fellow servants' doctrine, which was announced first in South Carolina, is not a defense. Contributory negligence is not a full defense, but merely diminishes the amount of the recovery.

"Assumption of risk is a defense, but it rests upon the intelligent acquiescence and knowledge of the danger and appreciation of the risk naturally and ordinarily incident to the employment, or arising from a particular situation in which the work is done. It negatives the *prima facie* liability of the employer and does not involve the aggravation or creation of· the peril by misconduct of the servant. * * *

"Some authorities hold that assumption of risk is not based upon contract. It is generally held to grow out of the contract of employment, and of the application of the maxim *'volenti non fit injuria.'*

"The test of knowledge of danger is not the exercise of ordinary care to discover the danger, but whether the danger was known to or plainly observable by the employé. The test of appreciation of risk is whether the servant understood the risk, or by the exercise of ordinary care ought to have understood it." *Chesapeake & O. R. Co. v. DeAtley,* 159 Ky., 687, 167 S. W., 933, 934, reversed on other grounds 241 U. S., 310, 36 S. Ct., 564, 60 L. Ed., 1016.

The distinction between assumption of risk and contributory negligence is said to often be shadowy, but surely the Court will not grasp at the shadow and lose the substance. Congress has recognized the distinction and it must not be overlooked.

The first ground upon which the motion for a nonsuit was granted is that there was no substantial evidence of actionable negligence. Much is said in argument by counsel for both parties under this point with respect to the contention that the plaintiff under the rules was the vice principal and cannot recover. Since the fourth ground relates entirely to this contention it will not be necessary now to consider this proposition. The only question under the first group of exceptions is, was the evidence sufficient and substantial enough to carry the case to the jury on the issue of negligence? In other words, was the place,

consisting of the station yard and trackage, in good repair and reasonably safe for the purposes for which plaintiff was required and compelled to use it in order to perform the duties assigned to her by the employer of signalling the near-at-hand approaching freight train in a timely way to accomplish the work of the master and to carry out the rush order to stop a through freight to pick up five carloads of baskets, for the benefit of the master in, if not an unusual manner, at least in an unexpected manner, under last-minute telegraphic orders changing the first orders, and necessitating the change of routing on some of the waybills? It does not answer the question to say that the board showed red as a sufficient stop signal. She had to approach near the train before it stopped "to give him the signals by hand to head in and to deliver the hoop with the way-bills on it," and it was necessary for her to go across the soft dirt with concealed holes in it, or pockets, and to cross the rails with insufficient dirt between them, to reach the main line track. The respondent's brief refers to the engineer as the one she had to signal to head in, and that she grabbed the waybills and ran out of the office to deliver them to the conductor. In any event, she was acting in the proper way to do the work expeditiously. The work on the premises was done very recently and was supposed to be finished. So the injury was not sustained during the progress of the work nor by one actually engaged in doing any repair work at the instant moment. It was a repair work job and the ties had been put in only four or five days to a week beforehand. The extra gang, the section foreman and the track foreman did the job. It looked smooth and all right. But the bed was not quite to the level of the crossties and the crossties were not covered as they generally were. The track crew left it in this insufficient condition. The place that she stepped on seemed to be a regular hole and her foot went down in the hole. The dirt was soft and not packed. Her foot struck a rock which was concealed in the soft dirt between the main line and the side track directly in front of the office door, and along the only

entrance for her to use that day. In going from the depot home she crossed the tracks daily, but not directly in front of the office. She also delivered train orders daily, but not necessarily over this same ground, but depending on the way the train was going. In fact she had been working at the depot eighteen months but the repair work was less than a week old and if she used this route and method in safety for eighteen months prior to the repair job, it is not unreasonable to say that the evidence substantially shows neglect in the repair job.

The jury is the fact-finding tribunal to decide upon the issue of negligence, and of course no opinion is expressed now for the jury to be guided by. The matter before the Court is as to the nonsuit by the trial Judge thus taking this case from the jury. The respondent relies in argument upon the conclusion that "when the transcript is analysed it will be disclosed that the testimony to (prove negligence) this effect is far from convincing." Also respondent says, "In any event, Mrs. McClain knew that this particular condition existed." The employee is entitled to a reasonably safe place in which to work. The measure of duty in such cases is reasonable care having regard to the circumstances. This is not a case where engineering matters are involved, and are sought to be left to the varying judgment of juries. It is claimed that the repair job negligently failed to comply with common sense and the dictates of prudence in ordinary matters. Also it is claimed that the State statute was not complied with. Respondent says that the statute was either substantially complied with or that it has no application to an employee. Sec. 8416 of the Code of Laws, 1932, of this State, sets forth the requirements to keep the grade at all stations on the right-of-way level with the ties and four feet wide on the station side· for a distance of one hundred fifty feet on each side of the stopping place. At least this is a legislative enactment of the standard or yardstick to be used for the protection of all citizens in the ordinary use of the depot in any capacity. There was substan-

tial evidence in this case, which if believed by the jury, proves negligence as alleged, in one or more particulars set forth in the complaint, and the case should have been submitted to the jury as to negligence. Nothing is said in the record as to the willfulness alleged in the complaint, but there is no evidence sufficient to sustain the allegations thereof, nor does the Act of Congress create any liability for other than negligence.

The second ground of the motion for the nonsuit was predicated upon the major premise that the condition of the ballast was not the proximate cause of her injury, but that the proximate cause was, under her testimony, her stumbling over the rails, as to which no negligence is charged. The trial Judge at first refused to sustain this ground, but later held that there is nothing in the specifications of negligence to support a recovery. Respondent does not argue the point that the complaint fails to allege the condition of the rails as an act of negligence nor does a scrutiny of the complaint bear out such a criticism. The defendant cannot successfully deny that the probable result of its negligence, as alleged, was to cause the plaintiff to trip on the uncovered rails and stumble in the soft dirt. The dirt was not level with the rails and the dirt was not packed. Respondent seems to think that it would require omnipotent wisdom on the part of the defendant to be able to foresee such an event, but that the plaintiff by reason of her knowledge as a telegraph operator and depot agent was possessed of such profound learning in regard to road building as to preclude all recovery on her part.

Respondent says "that the most that can be said of the new ballast is that it was a condition that permitted the real cause—stumbling over rail—to operate. In fact it is perhaps more reasonable to assume that the soft earth cushioned rather than aggravated appellant's fall." Not only does this beg the question, but it strains the imagination to create a cushion out of rocks and loose ballast. At least the jury should be allowed to draw the con-

clusion as to the proximate cause, and not the Court under the allegations and proof.

The third ground upon which the nonsuit was granted is that she assumed the risk. There is no proof of intelligent appreciation of the danger on her part. The defendant had made the repairs less than a week before and she had a right to assume that the place was safe in which to work. She could not do the work in any other way. It was her duty to deliver the waybills to the trainmen and she had her hoop in hand for this purpose. The evidence is silent to explain this, but a jury no doubt knows that the hoop is used to hand up to the engineer or perhaps to the conductor the train orders or papers while the train is moving past the station agent and she had to reach this post to do this before the train went by to head in. She not only had to flag the train to stop, but she had to deliver train orders to some one in charge of the freight, and to do so in a timely way, on short notice to her. At any rate, she could not deliberate and decide between one of two ways to carry out her urgent orders, and if there was a choice open of any other way to do so, she had no time to act otherwise. The case of *Nelson v. Southern Railway Company*, 246 U. S., 253, 38 S. Ct., 233, 62 L. Ed., 699, cited by respondent is not in point, but forcefully illustrates the fallacy of the contention that Mrs. McClain knew of the danger. Nelson was a civil engineer of eleven years' experience sent to survey the railroad yard. He stepped on a rotten cross tie and fell. His knowledge as an engineer of the condition of the tie and ballast grew out of his duty as an engineer and he could not recover. Here Mrs. McClain's duties and knowledge related to her work. She says, "I was the only one on duty and the express and the telephone and Western Union wire and everything was there to look after, and I had that to do." She must have been efficient at her post of duty because she worked at large stations at Anderson, Greenwood and other places, starting at Jackson as second trick operator on September 1, 1918. Also, although she was thirty-three years of

age, married for seventeen years, with five children she never lost her seniority with the company and held her job until she was injured and was not able to carry on the heavy work. She asked to be put on the extra board until lighter work came up. This was done on 18th of October, 1936, but she was laid off in January, 1937. She, therefore, had no experience in testing road building, track laying, ballast packing, loose unpacked dirt or exposed rails. She had not used this place but four or five days and did not go the same way each time. She had worked in safety for eighteen years, but the defendant had failed on its part to repair its own yard and station premises according to standard only a week prior to her fall. It seems, therefore, that the jury should pass upon the question of assumption of risk and that the Court cannot do so as a matter of law.

She was called upon to act in an emergency and to carry out urgent train orders at the moment of the arrival of the passing train and did not have time to act otherwise. *Douglass v. Southern Railway Co.*, 82 S. C., 71, 62 S. E., 15, 63 S. E., 5; *Blalock v. Graniteville Manufacturing Co.*, 183 S. C., 247, 190 S. E., 709.

The fourth and last ground upon which the motion for the nonsuit was made and sustained is that the rules of the company charged her with the duty "of seeing that the premises were maintained in a reasonably safe condition and the master's knowledge of an existing condition cannot be held to be superior to hers."

The rules in evidence require that at stations where there is no yardmaster the station agent will act as yardmaster. It is the duty of the yardmaster to have charge of the yards where trains are made up, of the men employed, ·the trains and cars therein. He will see that the yards are kept in good order, and that all cars cut out of service are sent to the repair track. The station agent reports to and obeys the orders of the superintendent, trainmaster and chief train dispatcher and other departments. The roadmaster and section foreman are required to make repairs of

tracks, roadbeds, etc., at all times, and are responsible for the proper inspection and safety of tracks, etc., the section foreman shall pass over his whole section every other day, and see that it is in good and safe condition, direct the labor of his hands and engage personally in all work necessary to keep his section in proper order.

Let it be observed that the rules do not impose the specific duty upon the plaintiff to lay rails, haul ballast, or repair the yards, nor are such duties put upon the yardmaster. Her duties relate to the movement of cars in the yard, the good order and deportment of employees at stations, to prevent the unauthorized use of the station property, and to keep clean the buildings and grounds and in proper condition for the accommodation of passengers and freight. A strict and reasonable construction of the rules eliminates any duty to inspect tracks, or hire or direct labor, or to make repairs, or to engage personally in any labor or work thereabouts.

The cases cited by respondent speak of a perversion of the Act of Congress to allow a recovery to one injured by his own acts, on the ground that possibly it might have been prevented if those in secondary relation to the movement had done more. It would be not only a perversion of the statute, but would emasculate the Act of Congress, to hold that the rules of the company can impose secondary duties upon a station agent, which elevate her to a vice principal of the corporation, on the theory that a corporation is not a physical entity, and necessarily has to impose by rule certain duties upon its agents and servants as otherwise it could not function. It is contended by respondent in the fourth ground that the defendant's knowledge of the existing condition cannot be held to be superior to hers, because the rules of the company clothe her with the minor part of keeping good order and clean premises at the station, for the accommodation of passengers and freight, and to have charge of the yards, men and trains moving therein.

Upon a careful consideration of all of the facts and circumstances in this case, it is evident that fair-minded men

may honestly draw different conclusions as to the negligence charged, so that the question is not one of law, but of fact, to be settled by the jury under proper instructions.

The exceptions are sustained, and judgment reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE BAKER concurs in result.

MR. JUSTICE CARTER did not participate on account of illness.