15013

HILTON v. SOUTHERN RY. CO. *ET AL.*

(7 S. E. (2d), 161)

March, 1939.

*Messrs. Park, Tinsley & McGowan* and *W. H. Nicholson,* for appellant,

*Messrs. Frank G. Tompkins* and *Blythe & Bonham,* for respondents, Southern Railway Company and J. T. Williamson,

*Messrs. Grier, McDonald & Todd* and *Howard L. Burns*, for respondent, C. Y. Thomason Construction Co.,

February 10, 1940.

*Per curiam.*

Appellant's intestate, S. W. Hilton, at the time of his injury (from which injury he died) was an employee of the respondent, Southern Railway Company, in the capacity of conductor, and was therefore in control of and had the direction of the train of this respondent. At the time of the accident, the train consisted of an engine, tender, and two cars, one being an empty coal car and the other a box car loaded with cotton factory products for shipment over said respondent's line of railroad. The train as thus made up was on a spur track, the cars above referred to being coupled to

the front of the engine. It was backing, and S. W. Hilton was riding on the steps or running-board of the tender. As it reached and entered upon a recently opened but uncompleted highway crossing the spur track, the train was in collision with an automobile driven by F. B. Coleman, who was attempting to use the crossing at the same moment, and Hilton received injuries from which he died.

The respondent, J. T. Williamson, was an employee of the respondent, Southern Railway Company, as locomotive engineer, and the engineer on this train.

The respondent, C. Y. Thomason Construction Company, was the contractor engaged in constructing the new highway entering the City of Greenwood, which crossed said spur track. The paved portion of the highway had been completed but the shoulders had not been completed. While traffic was permitted on the new highway, and this for only about eleven days prior to the accident, it was obvious to anyone that the highway was yet under construction.

In the drafting of the complaint, appellant elected to use the alphabet in designating the specifications and particulars of the joint and concurrent acts of carelessness, recklessness, willfulness, wantonness and negligence of respondents alleged to have caused the death of her intestate, and such specifications and particulars consumed the entire alphabet. As just indicated, the allegations of negligence, etc., numbered twenty-six, but as brought to a slow boil in the trial of the case can be stated as follows:

*As to Southern Railway Company:* Failure to erect crossing signs at this crossing or place a flagman there. *And in connection with J. T. Williamson, its locomotive engineer:* Failure to ring the bell or blow the whistle before entering upon the crossing; failure to stop the engine and train before going upon the crossing, and entering upon this crossing which had become a much traveled place at a speed of 20 to 25 miles per hour without giving any warning of the train's approach. *As to C. Y. Thomason Construction Company:* Permitting traffic to enter upon and to travel along

the new paved highway when it knew that no "Railroad Crossing" signs or other signs of warning had been erected at this crossing.

At the conclusion of the testimony for appellant, the respondents moved for a nonsuit on various grounds which need not here be stated. In fact, we need not even refer to the grounds upon which the trial Judge granted the motion, but can rest the affirmance of his ruling on "the additional grounds" of respondents.

Two of the "additional grounds" of the respondents, Southern Railway Company and J. T. Williamson, are:

"4. Plaintiff's intestate having voluntarily stationed himself in the position where he was at the time of his death, and himself as conductor being charged with the duty of seeing that proper signals were given, and of warning and protecting travelers upon the approach of the train to the crossing, cannot be allowed to complain that defendant was negligent or reckless in failing to take the precaution which it was his own duty to take, or to warn him of dangers of which he was fully aware."

"8. That deceased voluntarily placed himself and continued to remain in a place of danger which arose during the progress of the work which he had voluntarily undertaken to perform, that any danger that existed was fully known and appreciated by him and was assumed by him under his contract of employment."

One "additional ground" of the respondent, C. Y. Thomason Construction Company, was: "5. That in no event can any reasonable inference be drawn from the testimony of the violation of any legal duty which C. Y. Thomason Construction Company may have owed to the deceased Hilton, and that one of the essential elements of negligence is the violation of some legal duty which the defendant owed that particular plaintiff."

It is a matter of such common knowledge that the ▮ conductor of a train has the entire charge thereof, even to the extent that it is his duty to enforce all

rules applicable to the other members of the train crew, such as the engineer, fireman, flagman and brakeman, and see that they perform their duties, that the Court can take judicial notice of the scope of his powers over the train and train crew of which he is the conductor. In other words, he is the leader and guide of the train in its movements under orders. He is the representative of the operating corporation. See *Hicks v. Southern Ry. Co.*, 63 S. C., 559, 576, 41 S. E., 753.

Appellant's intestate voluntarily placed himself in a position of danger if the train in backing came in contact with any object, when he could have ridden on the engine with the engineer and fireman, an obviously less dangerous place in which to perform his duties; and having so placed himself, his administratrix cannot complain that he was not furnished a safe place in which to perform his duties. If he placed himself on the running-board of the tender for the protection of his train and to warn others of its approach, then it is inconceivable that he did not know the train was about to cross a highway, since the testimony of appellant's witnesses is to the effect that there was a steady stream of traffic using this crossing, and it was in the daytime, not nighttime. If the crossing signals were not given by the engineer, then it was his duty either to see that the signals were given, or the train brought to a stop. Again, if the crossing signals were not given, then he was aware of this fact. (Under these circumstances it becomes unnecessary for us to enter upon any discussion if the statutory signals are required for the protection of a member of the train crew.) If the train was traveling at a too rapid rate of speed, considering the locality, it was his duty to signal the engineer to a slower speed. If he was in such a position that he could not signal the engineer or fireman, then he had voluntarily so placed himself, and his administratrix cannot complain. If it was the duty of appellant's intestate to ride on the running-board of the tender of the engine when the train was backing, it was a risk ordinarily in-

cident to his employment. If it was an extraordinary risk, he placed himself there, and to a man who had been a trainman for many years, he was bound to have observed and appreciated such extraordinary risk. See *Meyer v. Gulf Refining Co.*, 179 S. C., 324, 184 S. E., 796; *Blalock v. Graniteville Mfg. Co.*, 183 S. C., 247, 190 S. E., 709; *Scott v. International Agr. Corp.*, 180 S. C., 1, 184 S. E., 133; *Hice v. Dobson Lumber Co.*, 180 S. C., 259, 185 S. E., 742; *Stogner v. Great A. & P. Tea Co.*, 184 S. C., 406, 192 S. E., 406.

A cursory reading of Section 8356, Code of 1932, will dispose of appellant's contention that the failure to erect signs on a highway crossing a railroad track was negligence insofar as it affects her intestate.

If the crossing in question required a flagman at the time of the accident to protect the train crew, it was the duty of appellant's intestate to provide a flagman or to cause the train to come to a stop before crossing the highway, and himself flag oncoming traffic, and when he failed to do so, he assumed the risk.

We are unable, after a careful reading of the record, to perceive wherein the respondent, C. Y. Thomason Construction Company, failed in any legal duty it owed the deceased.

While we sympathize with the dependents of the deceased, as no doubt did the trial Judge, we must affirm his conclusions.

All exceptions are overruled.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE LIDE concur.