No. 89-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

RICHARD KALANICK,

      Plaintiff and Respondent,

-vs-

BURLINGTON NORTHERN RAILROAD COMPANY,
A Delaware corporation,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant(s):

        Curtis G. Thompson; Jardine Law Firm, Great Falls,
        Montana

    For Respondent(s):

        Erik B. Thueson, Thueson Law Firm, Helena, Montana

Submitted on Briefs: Dec. 7, 1989

Decided:  March 9, 1990

Filed:

Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Burlington Northern Railroad Co. appeals from a judgment entered in the District Court, Eighth Judicial District, Cascade County, awarding Richard Kalanick $431,450. We affirm the District Court.

The issues raised by Burlington Northern (B.N.) are:

1. Did the District Court err in striking the defense of contributory negligence and instructing the jury that Kalanick was not negligent as a matter of law?

2. Did the trial court err by allowing evidence of a similar injury to be admitted?

3. Did the trial court err by reading a portion of an instruction it had previously denied?

4. Did the trial court err by instructing the jury that the injury to Kalanick need not be the result of a single incident, but may arise gradually from the character of the work?

5. Were portions of Kalanick's closing arguments improper, thereby prejudicing B.N.?

6. Did the trial court err in denying B.N.'s motion to alter or amend the judgment?

In April of 1986, B.N. employees on the hi-line route were informed that upper level management was soon to inspect the area. A concerted effort to clean up the right-of-way of debris became a priority job for hi-line employees. Roadmaster Ed Sherman was responsible for the area between Loma and Ethridge. Sherman put his section crews and inspection crews on clean-up detail, in addition to their regular work.

Richard Kalanick and his partner were a two-man inspection crew. They were told to pick up what debris they could manage during their inspection patrol.

Kalanick and his partner patrolled the track from a rail-mounted pickup truck known as a "high rail." Section crews were given mechanical lifting equipment to accomplish the job of lifting

2

heavy debris such as old ties, but Kalanick and partner did not have the benefit of such a device. Consequently, if they spotted jobs requiring long periods of heavy labor, they reported them to the roadmaster for section crew assignment.

Kalanick and his partner were assigned to a 46-mile rail stretch known as the Gildford section. This section was full of debris, including approximately 1,000 ties. Kalanick understood that he and his partner were to clean up any debris which they could manage. Kalanick and partner, due to the nature of the high-rail truck and the lack of lifting equipment, necessarily had to lift and carry the ties up and down the subgrades and load them on the truck. Once loaded, they would drive to an area designated for burning, and manually unload the ties. Kalanick estimated that he and his partner loaded and unloaded some 900 ties prior to his injury.

On April 23, 1986, after several hours of lifting ties, Kalanick's back gave out.

Kalanick filed suit on August 28, 1987, alleging that B.N. negligently failed to provide him with a safe place to work, adequate instruction, reasonably safe equipment and adequate manpower to perform the job safely. B.N. filed its answer, denying the allegations and raising contributory negligence as a defense.

Jury trial commenced on December 12, 1989. At the close of evidence, the trial court struck the defense of contributory negligence, ruling it to actually be an assumption of risk defense, precluded under the Federal Employers Liability Act. The jury returned a verdict in favor of Kalanick in the amount of $431,450. This appeal resulted.

B.N. contends that the defense of contributory negligence was improperly stricken by the trial court. Kalanick maintained at trial that B.N. was actually attempting to assert the defense of assumption of risk, which is prohibited under the FELA. 45 U.S.C. § 54 states in part:

> In any action brought against any common carrier under
> or by virtue of any of the provisions of this chapter to

3

recover damages for injuries to . . . any of its employees, such employees shall not be held to have assumed the risks of his employment in any case where such injury . . . resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . ..

While assumption of risk is prohibited, the defense of contributory negligence has not been abolished in FELA actions. McClain v. Charleston W. C. Ry. Co. (1939), 4 S.E.2d 280. The question then becomes: what constitutes contributory negligence? This has been a common problem in FELA cases. Most courts have stated that assumed risk arises out of the employment contract, while contributory negligence arises out of conduct. In Taylor v. Burlington Northern R. Co. (9th Cir. 1986), 787 F.2d 1309, 1316, 1317, the court stated:

> Although there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. (Cite omitted.) At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. (Cite omitted.) Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.
>
> * * *
>
> The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk.
> * * *
>
> Reporting to work or facing the risks inherent in one's job is the essence of assumption of risk.

Following that reasoning, Kalanick asserts that his decision to follow orders and load and unload ties rather than refuse to do

4

the work constitutes assumption of risk. Testimony of the Roadmaster, Ed Sherman, Kalanick's supervisor, reveals that Kalanick did the work expected of him, and as he was expected to do it. In addition, the testimony of three B.N. foremen was of the consensus that the assignment of heavy labor to two men with only a high-rail pickup was "unreasonable" and "unsafe," with the ultimate result that "somebody will wear out [and] get hurt."

Testimony of the B.N. employees refutes B.N.'s contentions of an absence of negligence on its part. The FELA imposes a high standard of care upon the carrier. Kernan v. American Dredging Co. (1958), 355 U.S. 426, 439. There are duties imputed to the carrier under the Act, including: The duty to provide a safe workplace, Tiller v. Atlantic Coast R.R. (1943), 318 U.S. 54; the duty to furnish employees with suitable equipment to enable the employee to perform work safely, St. Louis Southwestern Ry. Co. v. Greene (Tex. 1977), 552 S.W.2d 880, 884; the duty to provide sufficient manpower to complete work in a reasonably safe manner, Blair v. Baltimore & O.R. Co. (1945), 323 U.S. 600; and the duty to assign workers to jobs for which they are qualified and to avoid placing them in jobs beyond their physical capabilities, Fletcher v. Union Pac. R.R. (8th Cir. 1980), 621 F.2d 902, 909, cert.denied 449 U.S. 1110. See generally Ackley v. Chicago and North Western Transp. Co. (8th Cir. 1987), 820 F.2d 263.

The record is clear that B.N. did not assign to Kalanick any lifting devices. Kalanick and his partner were expected to do substantial lifting without mechanical aid. Roadmaster Sherman

5

testified that it was his responsibility to make sure that there was sufficient manpower and equipment assigned so that men would not get injured. The case law under the FELA amplifies that point. Sherman knew he had a duty to protect his men. The District Court weighed that fact against assertions by B.N. that Kalanick should have availed himself of additional manpower or equipment, used "safer" lifting techniques or better discretion as to which items he lifted. B.N. contended that Kalanick, by his own failings, was contributorily negligent. The District Court, in light of 45 U.S.C. § 54 and the multitude of cases interpreting it, correctly dismissed B.N.'s contributory negligence defense. The court in its ruling stated:

> It seems to me that your factual arguments go to assumption of the risk . . .. There was testimony, very clear testimony from the representatives of Burlington Northern that as far as they were concerned, Mr. Kalanick didn't stray from the ordinary course of his duties. That he was performing his duties in a reasonable manner.
>
> Specifically, the question [of whether Kalanick created any new dangers for himself] was asked and answered.
>
> Where is the evidence? I just don't see it. I was listening very carefully for that very evidence that would give you that defense [of contributing negligence], and I did not find it in this case.

The District Court, having viewed all the evidence, determined that B.N. was attempting to interject assumption of risk, and therefor properly disallowed the defense. To impute negligence to Kalanick through instruction to the jury when no contributory negligence was shown would have been error. Because no contributory negligence was shown, the court correctly instructed the jury that Kalanick was not negligent "as a matter of law."

6

(Emphasis supplied.)

B.N. next contends that the trial court erred by allowing evidence of a similar injury to be admitted. B.N. Section Foreman Joe Stiffarm testified, and Roadmaster Ed Sherman verified, that another man previously under Sherman's direction had injured his back by lifting ties and had sued, alleging insufficient manpower and inadequate lifting devices.

B.N. argues that the evidence was irrelevant, due to failure to show the accident happened under similar circumstances.

This Court has stated that evidence of prior accidents is admissible for the purpose of showing the existence of danger or defect and notice thereof. Runkle v. Burlington Northern (1980), 188 Mont. 286, 613 P.2d 982. The accidents need not be identical to be admissable. Tacke v. Vermeer Mfg. Co. (1986), 220 Mont. 1, 713 P.2d 527. Kalanick maintains that B.N. had notice of the prior injuries and that Kalanick's injury was foreseeable in light of the prior injuries. B.N. counters that the prior injury occurred six years before Kalanick's injury, took place in the railroad yard on flat surface, and involved a larger tie.

Both accidents involved a laborer, working under the same foreman, lifting rail ties manually and thereby injuring his back. For the purpose of showing the railroad was or should have been on notice that workers may be injured and that such injuries are foreseeable, the District Court properly allowed evidence to be admitted to show the railroad's failure in the duty, under FELA, to "promulgate and enforce safety rules." Ybarra v. Burlington

Northern (8th Cir. 1982), 689 F.2d 147.  In Young v. Illinois Cent. Gulf R.R. Co. (5th Cir. 1980), 618 F.2d 332, 339, the court stated:

> Admission of evidence of two recent prior accidents for the sole purpose of showing that [the railroad] had notice . . . does not require a trial of the details and circumstances of those prior accidents.  It should be considered by the jury for the purpose of determining whether a reasonably prudent railroad with notice of prior accidents . . . would have taken precautions against future accidents . . ..

The District Court properly admitted evidence of the prior injury. B.N. did not object to Foreman Stiffarm's testimony on the grounds of hearsay, hence the objection was not preserved on appeal.  M.R.Evid. 103(a)(1).

B.N. next contends that the trial court erred in reading a portion of plaintiff's offered instruction that had been denied earlier on the grounds of being argumentative.

Plaintiff's proposed instruction read:

> The railroad has a continuing obligation to furnish adequate manpower and equipment to perform the work assignment in a reasonable and safe manner.  Thus, the railroad cannot escape its legal obligation to furnish suitable equipment or adequate manpower by claiming that adequate manpower or proper equipment was not available.

During the settlement of instructions, B.N. objected to the second sentence of the instruction as being argumentative.  The trial court agreed and excised the second sentence, but later read the entire instruction to the jury.  B.N. claims that the language of the second sentence imposed a bias upon the jury against B.N.'s position at trial that all manpower and equipment was mobilized during the cleanup campaign.

Under FELA, the railroad has a continuing obligation to

8

provide adequate manpower and equipment. The court in Ragsdell v. Southern Pac. Transp. Co. (1982), 688 F.2d 1281, 1283, stated:

> The duty is a "continuing one" and requires a jury to weigh a myriad of factors -- including the nature of the task, its hazards and efforts -- in determining whether an employer furnished an employee with a reasonably safe place to work . . .. This continuous duty to provide a safe place to work is broader than the general duty to use reasonable care. Other courts in FELA actions have held that failure to instruct a jury regarding an employer's duty to provide a reasonably safe place to work is reversible error.

Kalanick argues that the instruction is a correct statement of law, that B.N. cannot pick and choose which workers to afford adequate protection and at what time. If B.N. did not have the manpower or equipment, Kalanick argues, it should not have assigned him to the work. This Court has ruled in a FELA action, where the plaintiff has submitted to the jury evidence tending to prove an actionable violation of the Act, he is entitled to instruction adaptable to his case. McGee v. Burlington Northern, Inc. (1977), 174 Mont. 466, 571 P.2d 784. Under McGee, the instruction was proper.

B.N.'s next contention of error is over the following instruction:

> It is not necessary that the injury result from a single incident. The term has been construed broadly to include damage or harm to the physical structure of the body which arises gradually from the character of the work.

B.N. objects to this instruction on the ground that it "eliminates the element of negligence." We do not agree. Under Buell v. Atchison, Topeka & Santa Fe Ry. Co. (9th Cir. 1985), 771 F.2d 1320, cert. granted 476 U.S. 1103, affirmed in part, vacated

9

in part, and remanded on other grounds 480 U.S. 557, this is a proper statement of the law. Further, the necessity of negligence on the part of the carrier for the injury to be compensable was properly set forth in accompanying instructions. This instruction merely helped define the concept of injury. The District Court properly allowed the instruction. B.N. next contends that Kalanick's closing argument was improper and prejudicial.

B.N. takes issue with Kalanick's statement that B.N. had previously injured another worker in the same manner and "then it was business as usual and then Dick [Kalanick] loses his back. And if we don't stop this, it's going to be business as usual in the future . . .." B.N. states that this argument is improper where punitive damages are not at issue.

However, it must be viewed in context. This statement was made in rebuttal, following the railroad's argument that all equipment and manpower was properly utilized elsewhere, and that no negligence on the part of the railroad existed. Counsel for Kalanick disagreed, and pointed out the foreseeability of the accident due to the prior injury. Kalanick's counsel's next utterance is that: "The railroad has to know they have to follow the law. And if they don't follow the law, they have to compensate the man fully for the injuries that he has. That's the only way we can assure safety and compliance with the law."

Improper argument requires a reversal of a verdict only when prejudice has resulted which prevents a fair trial. Nelson v. Hartman (1982), 199 Mont. 295, 648 P.2d 1176. There is no showing

that the jury verdict was inflated in any way, suggesting part of the award was exemplary. Counsel for Kalanick merely asked for full compensation for his injuries. Where B.N. took the position that it had done no wrong under the law, and would continue those practices, Kalanick rightfully took issue with B.N.'s contentions.

B.N. also contends that Kalanick's statements that an award of $200,000 would be against the law and violate the jurors' oaths were improper. In closing, counsel for B.N. argued that Kalanick's request for $345,000 for loss of future earnings was excessive, and offered $200,000 as a fair and equitable amount. On rebuttal, counsel for Kalanick argued:

> Let me go over what it would do if you awarded Dick Kalanick only $200,000. First of all, it would violate the law because the law says he's entitled to compensation, fair compensation according to the evidence for every one of his losses.
>
> * * *
>
> Secondly, it would violate the evidence, because the uncontradicted evidence . .. is that Dick Kalanick at a very minimum suffered $408,000 in economic losses alone.
>
> * * *
>
> Thirdly, it would violate your oath as jurors . . . to award $200,000, because your oath is to follow the evidence and the law.

As stated above, improper argument requires a reversal only when prejudice is the result, affecting a fair trial. Nelson, supra. Kalanick sought a minimum of $408,450 for loss of past and future earnings, the subject of the above-quoted argument. The jury, after hearing all arguments, awarded Kalanick $201,450 in lost earnings, less than the amounts of $63,450 in past earning

11

loss plus $200,000 in future earning loss proposed by B.N. in closing argument. In light of these figure, B.N.'s contention that Kalanick's argument resulted in prejudice has little merit.

B.N.'s final contention is that the trial court erred in denying its motion to alter or amend the judgment.

B.N. seeks three different reductions in the judgment.

First, B.N. seeks to reduce the $48,000 reward for lost services, due to its "speculative" nature. However, there was testimony at trial, including that of B.N.'s own medical examiner, which stated that Kalanick would not be able to safely lift more than 20 pounds. Based on life expectancy, this award amounts to approximately $1,200 per year for his inability to perform menial physical tasks as would a healthy man. Ample evidence at trial existed to support the award.

Further, the amount to be awarded in damages is properly left to the jury, and this Court will not intervene where the award is neither so grossly out of proportion to the injury as to shock the conscience nor induce belief that it was the product of passion or prejudice. Salvail v. Great Northern Ry (1970), 156 Mont. 12, 473 P.2d 549.

Secondly, B.N. seeks to reduce the jury award by $72,000, the amount awarded Kalanick for future medical care.

In the three years prior to trial, Kalanick amassed medical costs of $29,156. The medical opinion offered at trial was that Kalanick would continue to need medical care for his injury, but to a lesser degree. Using Kalanick's predicted remaining lifetime

12

of 39 years, the jury's $72,000 award was reasonable. Where there is strong evidence of damages, a defendant should not escape liability because the amount of damages cannot be proved with precision. Johnson v. Murray (1982), 201 Mont. 495, 656 P.2d 170. This Court will not disturb a damage award, particularly in a FELA case, unless the award appears outrageously excessive. Grunenthal v. Long Island R. Co. (1968), 393 U.S. 156.

Finally, B.N. contends that the trial court erred by not crediting it with setoffs for wage advances and supplemental sickness benefits paid to Kalanick following his injury.

B.N. advanced $11,025 to Kalanick prior to trial, pursuant to agreement signed by Kalanick which provided:

> I understand and agree that this money advanced me will be deducted from any payment made by settlement or compromise or otherwise due to me on account of said injuries, no matter by whom payment is made.

Kalanick admits B.N.'s entitlement to this setoff, and we therefore reduce the judgment by $11,025.

B.N. also contends such a setoff is proper with regards to supplemental sickness benefits of $7,693.27 paid to Kalanick.

These benefits were issued pursuant to the collective bargaining agreement adopted by Kalanick's union. The agreement provides in part:

> . . . benefits paid under this Plan will be offset against any right of recovery for loss of wages the employee may have against the employing railroad . . ..

There is conflicting case law in regards to this matter. In Anderson v. Burlington Northern (1985), 218 Mont. 456, 709 P.2d 641, this Court ruled on the same issue, containing the very same

13

language in the agreement. We held that the provision was void under the FELA, 45 U.S.C. § 55, which states:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, that in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

In Anderson, as here, the payments were made through the union health and welfare agreement and were thereby exempt from setoff because they were a collateral source.

While that would appear to be determinative of the issue, the Ninth Circuit decision in Folkestead v. Burlington Northern (9th Cir. 1987), 813 F.2d 1377, ruling on the same clause, came to the opposite conclusion.

This Court has stated that, while FELA actions may be filed in either state or federal courts, the rights and obligations of employees and employers as created by the Act are to be governed by the decisions of the federal courts. State ex rel. Burlington Northern v. District Court (1976), 169 Mont. 480, 548 P.2d 1390. Accordingly, we determine that Folkestead takes preference over Anderson, and B.N.'s claim for an offset for sickness payments made to Kalanick in the sum of $7,693.27 is hereby granted.

Conversely, Kalanick contends that this Court should grant an additur for the reasonable value of past medical costs, equalling $29,156.16. Kalanick maintains that these costs were not awarded

14

due to error in the trial court's instructions.

This Court held in Fillbach v. Inland Construction Corp. (1978), 178 Mont. 374, 584 P.2d 1274, that an appellee who did not contest the amount awarded to him by cross appeal or did not except to or move to amend findings of fact of the trial court could not properly raise such questions in regard to amount of award for the first time on appeal. Accordingly, Kalanick is barred from seeking past medical costs here.

_____
                               Justice

We Concur:

_____

_____

_____

_____
             Justices

15