CARLOS WILLIAMS, Plaintiff and Respondent, v. NA-
THANIEL C. WALLACE, Defendant and Appellant.
No. 10561
Submitted June 4, 1963. Decided November 20, 1963.
386 P.2d 744

12

Leonard H. Langen, Glasgow, argued for appellant.

John Marriott Kline and William A. McCormick, (argued), Glasgow, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This cause arose as the result of personal injuries while the plaintiff was a guest passenger in an automobile involved in an accident on November 22, 1961, at about 4:30 P.M. The place of the accident was about eleven and one-half miles north of Glasgow, Montana, on the Glasgow Air Force Base highway. Plaintiff was riding with one George P. Brien, who was driving south. The defendant Wallace was going north. The record shows that it was snowing, there was slush on the road and it was slick. The defendant's car skidded around, out of control, and hit the Brien automobile in which the plaintiff was a passenger.

As a result of the accident, plaintiff suffered a broken nose together with a deviated septum and part of the nasal cartilages were missing, together with a broken dental plate, abrasions and concussion.

This cause was tried to the court sitting without a jury on August 31, 1962. At the conclusion of the trial, the court made twenty-five findings of fact and two conclusions of law and rendered judgment against the defendant in the lump sum of $13,500. It is from this judgment that the defendant appeals.

During the trial plaintiff testified, among other things, that after he had returned to work after the accident, he was forced to terminate his employment on December 23, 1961, because his injury was bothering him, and that his job would have lasted for three additional weeks. Defendant objected to the testimony of plaintiff concerning the duration of his job as hearsay and speculative. The objection was overruled. Defendant predicates his first specification of error on this

testimony with the issue: Whether a plaintiff in a personal injury action may testify as to the amount of working time he could have worked but for his injuries?

We readily admit that plaintiff's testimony concerning the duration of his job is speculative in character and that in general speculative testimony is inadmissible as evidence. However, as we pointed out in Cornell v. Great Northern Ry. Co., 57 Mont. 177, 190, 187 P. 902, 905, certain evidence is "more or less speculative in character" and thus, as we stated in Jones v. Shannon, 55 Mont. 225, 237, 175 P. 882, 886:

"There is no standard of measurement by which to determine the amount of damages to be awarded, other than the intelligence of the jury, made up of impartial men governed by a sense of justice. To the jury, therefore, is committed the exclusive task of examining the facts and circumstances of each case and valuing the injury and awarding compensation in the shape of damages."

In the instant appeal the judge was acting in the capacity of the jury and he had the task, mentioned above, which the jury would otherwise have had. In view of this situation we do not hold this error to have been prejudicial.

In testifying to the cost of an operation on a deviated septum and of plastic repair work on the nose, Dr. Little, a witness for the plaintiff and not a specialist in this field, was allowed to quote certain values which he had obtained himself and through office help from the standard fee schedule book published by the Montana Medical Association. Defendant objected to this testimony on the grounds of hearsay evidence. The objection was overruled. Defendant predicates his second specification of error on this testimony with the resultant issue being: Whether a medical doctor can testify to the cost of various medical operations or expenses when this information is obtained by the doctor himself or by his

office help from a standard fee schedule book published by the local medical organization?

The standard fee schedule book published by the Montana Medical Association contains the average price that Montana doctors charge for various medical operations, etc., and a doctor is not bound by these quoted prices. Montana Medical Association. In Morgan v. Hines, 65 Mont. 306, 315, 211 P. 778, in allowing cattle buyers to testify on cattle prices obtained from reading newspaper quotations or market reports, we cited 1 Elliott on Evidence, § 325 as authority. This section stated in part: "* * * if a person shows that his business is such that, by commercial reports or other means of like nature, he is familiar with the current market prices of an article, he is competent to testify on the subject, although he may not have actual personal knowledge of any particular sales." In the instant case the doctor's business or profession is that of medicine and he is familiar with the current costs of various medical operations by the standard fee schedule book of the Montana Medical Association. We do not feel, however, that such testimony prejudiced the rights of the defendant. Thus, the presumption is that such evidence was disregarded by the trial court when it made its findings, Cobban v. Hecklen, 27 Mont. 245, 261, 70 P. 805, and no reversal can be ordered because of this testimony. R.C.M.1947, § 93-8023.

Defendant's third and fourth specifications of errors concern alleged error in the trial court's findings of fact and conclusions of law respectively. Plaintiff contends that these two specifications of error are included in the issue: "Will the trial court's assessment of damages be disturbed where its findings of fact are supported by substantial evidence?" These two specifications of error can be combined and we will discuss them together.

The trial court made extensive findings of fact, being twenty-five in number. Finding of fact No. 7 was that the defendant violated sections 32-2151 and 32-2152, R.C.M.1947,

as amended, in that the defendant at the time of the accident, his automobile was using more than one-half the highway and was on the wrong side of said road.

Fact No. 8 was that the defendant gave no reason that would justify an automobile driven by a careful, prudent driver, using the care requisite with the condition existing, suddenly having his car go out of control and across said highway and against the automobile in which the plaintiff was a passenger.

Fact No. 9 was that by reason of said accident plaintiff was thrown in and about the automobile in which he was a passenger, causing him to suffer a cerebral concussion, a fractured nose, an irregular and jagged laceration across the bridge of the nose, and a broken lower denture.

Fact No. 14 was that it is going to be necessary for plaintiff to undergo either one or two operations, one being nose bridge plastic work, and the other, a nasal submucus resection. That these operations can be given either separately or at one time. That it will cut down the possibility of infection if surgery is performed in two operations.

The court further found that at the time of trial the plaintiff had a life expectancy of 39 years; that he would incur approximately $400 for surgery and $400 for hospitalization; that he had incurred future loss of earnings in the sum of $939. The conclusions of law were that the plaintiff is entitled to a decree finding the defendant negligent, and that the proximate cause of the injury to the plaintiff was this negligence and that the plaintiff was entitled to damages for pain and suffering, both mental and physical, loss of wages and special damages up to the present time and in the future in the sum of $13,500, together with costs.

The relief prayed for by appellant is that this court modify the judgment of the trial court on the premise that the size of the verdict for a broken nose shocks the conscience. From the testimony, uncontroverted in the main, it is clear

that more than a broken nose is involved. There was cerebral concussion, lacerations, disfigurement, subsequent operations, pain and suffering and loss of wages and future earnings.

This court in Maroney v. Dyll, 137 Mont. 187, 351 P.2d 373, said:

"The whole thing boils down to the fact that the questions involved are questions of fact. The case was tried by the court without a jury, which means that the court itself was the judge of the facts. It has been the rule of the Supreme Court for years that the court would not disturb the findings of the lower court where there is a conflict in the evidence and there is substantial evidence to support the findings."

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES and JOHN C. HARRISON, concur.

MR. JUSTICE ADAIR, specially concurring:

While I concur in affirming the judgment of the district court in this cause, yet I do not agree with much that is said in the majority opinion herein.

On plaintiff's case in chief plaintiff's counsel called the defendant Nathaniel C. Wallace to the witness stand as a witness on behalf of the plaintiff, at which time the defendant Nathaniel C. Wallace, at pages 44 and 45 of the transcript on this appeal, in part, testified as follows:

"Q. As you were proceeding north approximately eleven and a half miles from Glasgow were you involved in an accident? A. I was.

"Q. What were the weather conditions like that evening? A. Well, when I left here from Glasgow it was raining, It wasn't raining too hard or anything, and I left here on my way to the base and I didn't see no snow or nothing until after the accident, because when I left here it was raining. It wasn't snowing or nothing. It was a slow rain.

"Q. After the accident do you remember talking to the Highway Patrolman, Mr. Snodgrass, who just testified? A. I do.

"Q. Did he at that time give you an arrest ticket? A. No, he did not give me an arrest ticket. He gave me a citation.

"Q. What was the nature of the citation? A. It said not driving in a safe and prudent manner.

"Q. Did you appear in regard to that citation before a justice of the peace, George Scanson? A. Yes, I did.

"Q. How did you plead in regard to that citation? A. I pleaded guilty. Your Honor, may I say something? You know, counsel, why? Because it was told to me when I got the citation that he had to give me a citation because I was on the wrong side of the road, and if I am on the wrong side of the road I am guilty; that's why I pleaded guilty. My car went out of control and I couldn't get it straightened up. There was no other way for me to plead. If I plead not guilty I would have been telling a lie."

When it came to defendant's case, the defendant Nathaniel C. Wallace was the one and only witness that defendant's counsel called to the witness box and said defendant there gave oral testimony at the trial and before the district judge in this cause. At that time the defendant Nathaniel C. Wallace on his recross examination by plaintiff's counsel testified, at page 80 of the transcript on this appeal, and concluded his testimony thus:

"Q. This highway was slushy as the Highway Patrolman testified to, was it not? A. It wasn't slushy. It was just like a shield or something in the middle of the road, no snow no place. All of a sudden snow was everywhere, just like I told the Patrolman.

"Q. You heard Mr. Thompson and the Patrolman both testify, and so did George Brien and Carlos Williams, that it was slushy before the accident. A. Okay, yes, sir, I did, but it was just like I explained to the Patrolman, and he distinctly

18

told me himself, he said, 'These things happen.' Actually, I didn't see no snow until after it was over.

"Q. Could you see the center line that day? A. Yes I did. It was raining; it wasn't snowing, not where I was at until after I went into my skid and everything.

"MR. KLINE: That's all.

"MR. LANGEN: No further questions. (Witness excused.)"