No. 92-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

LISA COTTRELL, as personal representative
of the estate of VERN COTTRELL,

Plaintiff and Respondent,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a corporation,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Russell D. Yerger, Kroschel & Yerger, Billings,
Montana; J. Michael Young, Jardine, Stephenson,
Blewett & Weaver, Great Falls, Montana

For Respondent:

Erik B. Thueson and John A. Kutzman,
Thueson Law Offices, Helena, Montana;
Dennis P. Conner, Attorney at Law,
Great Falls, Montana

NOV - 2 1993

Filed: J. Smith
OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: July 1, 1993

Decided: November 3, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Vern Cottrell filed this action in the District Court for the Eighth Judicial District in Cascade County, Montana, to recover damages for injuries sustained during the course of his employment with defendant Burlington Northern Railroad Company. Following a jury trial, the jury returned a verdict for plaintiff, finding that defendant's negligence caused plaintiff damages in the amount of $1,362,236. Defendant appeals from the judgment entered pursuant to that verdict. We affirm the judgment of the District Court and remand with instructions.

The issues on appeal are:

1. Did the District Court commit reversible error when it excluded the opinion of Neil Meyer, M.D., regarding apportionment of plaintiff's damage between the incident which was the subject of this complaint and prior injuries?

2. Did the District Court commit reversible error when it excluded the testimony of Judy Freeman and her letter to plaintiff's attorney?

3. Did the District Court err when it rejected two of defendant's proposed jury instructions which pertained to contributory negligence and limitation of defendant's liability for plaintiff's pre-existing injuries?

4. Did the District Court err when it failed to rule on defendant's motion to amend the judgment, and declined to offset from the judgment monies paid to plaintiff by defendant and from other sources prior to trial?

2

## DISCUSSION

This action was brought by Vern Cottrell pursuant to the Federal Employers Liability Act found at 45 U.S.C. §§ 51 through 60 (1988). In his complaint and amended complaint, Cottrell alleged that in the winter of 1989, while working for the Burlington Northern Railroad Company in its maintenance of way department, he injured his back while operating some of defendant's machinery. Specifically, he alleged that in early winter 1989 he had been operating a small crane-like piece of machinery known as a "speed swing" over rough ground in the railroad yard, and that because that piece of equipment had an inadequate and worn out seat incapable of absorbing shock, his back was damaged while operating it. In addition, he alleged that on May 15, 1989, while operating an additional piece of machinery used for track maintenance and known as an "electromatic," he injured his back while lifting "buggies" which were used in combination with the electromatic and had to necessarily be loaded on it. He alleged that his injuries were caused by defendant's negligent failure to provide him with a safe place to work, adequate assistance to perform his job safely, and reasonably safe equipment.

In answer to Cottrell's complaint, defendant admitted that Cottrell was an employee and that during the course of his employment he had operated its machinery, but denied all of Cottrell's other material allegations. For affirmative defenses, defendant alleged that Cottrell was contributorily negligent, his damages were caused by pre-existing conditions, his damages were

3

aggravated by his own failure to mitigate them, and that it was entitled to a credit against any money it had already paid him.

The evidence at trial established that Cottrell had first gone to work for defendant in 1976 as a section laborer doing track maintenance and began operating different types of machinery for defendant in 1977. He originally injured his back during the course of his employment in the fall of 1980 while trying to lift railroad ties onto a truck. Following that injury, two surgical procedures were performed on his back in the area of the 4th and 5th lumbar vertebrae. The first surgery was to remove that part of the intervertebral disc which had ruptured as a result of his injury. The second surgical procedure was to treat other complications in the same area which resulted from the injury and the first surgery.

The evidence indicated that by July 1982, Cottrell was released by his treating physician to return to work for defendant without restrictions. He did so, and returned to all of his normal duties. However, in late 1988 or early 1989, he began to operate the speed swing, which had a cracked and broken seat incapable of absorbing shock. He was required to operate the speed swing across tracks and over rough ground. Over the several weeks that he operated that machine, he developed back soreness which gradually worsened. Then, in April 1989, he started working on the electromatic. He operated that machine until the date of his injury. On May 15, 1989, while lifting buggies onto the electromatic, as was required by his job, he felt a "bee sting"

4

like pain down his right leg and experienced back pain. He was unable to continue working. He parked the electromatic, went home, and as of the date of trial, had never been able to return to work due to his back injury.

Cottrell's injury occurred on a Friday. The following Monday, he went to see his family physician, who referred him back to Ronald D. Vincent, M.D., the neurosurgeon from Spokane, Washington, who had performed the second operation on his back in 1981 or 1982. Dr. Vincent diagnosed a reherniation of the intervertebral disc in the same area that Cottrell's previous injury had occurred, and performed two more surgical procedures to treat that injury.

After the second surgical procedure, Dr. Vincent referred Cottrell to William J. Tacke, M.D., a specialist in physical medicine in Great Falls, for further rehabilitation. Cottrell was under Dr. Tacke's care at the time of trial. Both Dr. Vincent and Dr. Tacke testified by deposition at the trial.

Prior to trial, defendant provided copies of Cottrell's medical records and diagnostic studies to Neil Meyer, M.D., a neurosurgeon in Billings, for evaluation. Defendant then scheduled Dr. Meyer's deposition, and during that deposition, asked him to express a number of opinions about Cottrell's condition, based on his review of those records. He was asked whether Cottrell should be able to return to work, and what percentage of Cottrell's current disability and symptoms resulted from his earlier injury, as opposed to the injury which was the subject of this complaint.

5

Trial in this case commenced on May 26, 1992. Prior to trial, on May 15, Cottrell moved in limine to exclude that part of Dr. Meyer's testimony in which he expressed the opinion that 90 percent of Cottrell's current problems resulted from his original injury, and only ten percent were attributable to the incidents which were the subject of his complaint. Cottrell's objection was that there was insufficient foundation for Dr. Meyer's testimony and that his opinion was sheer speculation and conjecture. That motion was granted.

Shortly before trial, but after the deadline for identifying expert witnesses, defendant identified Judy Freeman as a witness that it intended to call at trial, and identified a letter written by her to Cottrell's attorney as an exhibit that it would offer. Judy Freeman is a registered nurse at Deaconess Hospital in Great Falls, and administers the pain rehabilitation center. The apparent purpose of her testimony was to state that she concurred in Dr. Tacke's recommendation that Cottrell enroll in the hospital's pain rehabilitation center and that he had not responded to that recommendation. Cottrell moved to exclude her testimony and the letter she had offered on the grounds that she was not identified as an expert in a timely fashion, she was not qualified to express the opinions included in her letter, and her references to opinions by other health care providers were inadmissible hearsay. Her testimony, and the letter she authored, were also excluded by the District Court.

Additional facts, where relevant, will be discussed in relation to the various issues raised by defendant on appeal.

I.

Did the District Court commit reversible error when it excluded the opinion of Neil Meyer, M.D., regarding apportionment of plaintiff's damage between the incident which was the subject of this complaint and prior injuries?

We have held that issues concerning the admissibility of evidence are within the discretion of the district court. *Cooper v. Rosston* (1988), 232 Mont. 186, 190, 756 P.2d 1125, 1127. "The trial court is vested with <u>great</u> latitude in ruling on the admissibility of expert testimony." (Emphasis added). *Cash v. Otis Elevator Co.* (1984), 210 Mont. 319, 332, 684 P.2d 1041, 1048. When discussing the standard of review from a district court's ruling on the qualifications of an expert to express an opinion, we have held that:

> We set forth the standard that the determination of the qualification and competency of expert witnesses rests largely within the trial judge, and without a showing of an abuse of discretion, such determination will not be disturbed.

*Foreman v. Minnie* (1984), 211 Mont. 441, 445, 689 P.2d 1210, 1212.

Our review of the District Court's exercise of its discretion when it excluded the testimony of Dr. Neil Meyer must begin with Rule 702, M.R.Evid., which sets forth the criteria for admission of expert opinions. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

7

> evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Implicit in Rule 702 is the requirement that before a District Court allows a witness designated as an expert to express an opinion, some foundation must be laid to show that the expert has special training or education and adequate knowledge on which to base an opinion.

In this case, Cottrell did not question Dr. Meyer's qualifications as a neurosurgeon. He challenged whether Dr. Meyer had sufficient factual information which would enable him to express an opinion apportioning Cottrell's current symptoms and disability between two injuries which occurred nine years apart.

During Dr. Meyer's deposition, he acknowledged that the amount of damage to a person's back can vary depending on the forces applied to the back. He also agreed that the forces can depend on the amount of weight being lifted and the posture in which the lifting takes place. He testified that after surgical treatment of a herniated disc, reherniation occurs in only five to ten percent of patients, and the likelihood of reherniation depends in part on the kind of stress placed on the area of original injury.

However, in spite of these admissions, Dr. Meyer testified that he had never examined Cottrell, he had never met nor talked to him, and had never read his deposition testimony. Neither had he ever talked to Cottrell's treating physicians, nor read any of their testimony. He was aware that Cottrell had returned to work

8

in 1982 following successful treatment of his original back injury, but was unaware of either the type of work he had returned to, or the extent of the physical exertion he was capable of performing during his seven subsequent years of employment. He did not know the frequency of lifting nor the type of lifting involved in Cottrell's job. In fact, he knew nothing about Cottrell's job description.

Most significantly, Dr. Meyer was totally unfamiliar with the traumatic event which Cottrell alleged had caused his second injury. He did not know what an electromatic was; he did not know what a speed swing was (in fact, he testified that he wouldn't know one if he saw one, unless it was in golf); he did not know what a metal buggy was, nor how much one weighed; and he did not know the position in which it had to be lifted by Cottrell at the time of his second injury.

Based on Dr. Meyer's lack of information pertaining to Cottrell, his activities, and the incident which he alleged caused his injury, we conclude that the District Court did not abuse its discretion when it held that there was an insufficient foundation established for Dr. Meyer to express an opinion apportioning Cottrell's condition at the time of trial between the injury he sustained in 1980 and the injury he sustained in 1989. It was not unreasonable for the District Court to conclude that, at a minimum, before Dr. Meyer was qualified to express that opinion, he needed to know the extent of Cottrell's recovery from his earlier injury,

9

and the extent of the trauma to his back which caused the subsequent injury. This important foundation was absent.

Speculative testimony is inadmissible as evidence. *Williams v. Wallace* (1963), 143 Mont. 11, 13, 386 P.2d 744, 745.

Therefore, we affirm the District Court's exclusion of Dr. Meyer's testimony.

II.

Did the District Court commit reversible error when it excluded the testimony of Judy Freeman and her letter to plaintiff's attorney?

At trial, defendant proposed to call Judy Freeman as a witness and to offer a letter she had written to Cottrell's attorney on April 28, 1992. Freeman was identified by defendant as a nurse who was the operations manager of the Montana Deaconess Pain Rehabilitation Center. On April 28, she wrote the following letter to Cottrell's attorney:

Dear Mr. Thueson:

Since I have been unable to reach you by phone, I am writing to send you the outline of what types of programs we have available here at the Pain Rehab Center.

I have spoken with Dr. Tacke regarding Vern, and he has recommended an inpatient program for Vern. I would strongly agree, based on the information from Dr. Lloyd's report also. Constant supervision is necessary when the chronic pain problem has a very involved history. The sooner a pain management approach is instituted, the greater the chances of successful rehabilitation.

I would hope Vern's situation could accommodate the inpatient program, to begin with at least, as that is when the basis for education needs to be learned. Without a strong base, the chronic pain patient finds it

10

easier to revert to old management habits following the program.

     Feel free to call and let me know where we are on this. Thanks for your assistance.

     Sincerely,

     Judy Freeman, R.N., B.S.N.
     Operations Manager,
     Pain Rehabilitation Center

According to defendant's offer of proof, Nurse Freeman's testimony, if permitted, would have been substantially as set forth in her letter.

Although Nurse Freeman's letter is replete with opinions which require expertise, and although she had never been identified by defendant as an expert witness prior to trial, defendant contends that her testimony and her correspondence should have been admitted to show that Cottrell was notified of the availability of treatment at the pain rehab center and failed to mitigate his damage by taking advantage of that treatment.

However, even if her testimony and correspondence were admissible for that limited purpose, they were unnecessary for that purpose.

Dr. Tacke, Cottrell's attending physician who is referred to in Nurse Freeman's letter, testified at trial by deposition. He told the jury that he serves as medical director of the rehabilitation program at the Montana Deaconess Medical Center, and that during the course of treating Cottrell in October 1991, he recommended that he participate in the pain rehabilitation program. He also testified that Cottrell had not yet been able to

11

participate in the program due to various factors in his personal life which prevented separation from his family, and that he, Dr. Tacke, was satisfied that those personal problems would interfere with successful participation in the rehabilitation program.

Cottrell, himself, acknowledged that the pain rehabilitation program had been prescribed for him, but explained that, due to illness in his family which precluded any long term separation, he had been unable to participate in the program. Therefore, other than Nurse Freeman's personal opinions which were inadmissible for failure to disclose her as an expert prior to trial, her testimony and the letter she authored would have contributed no relevant information that the jury did not already have.

Defendant offered Nurse Freeman's testimony and her letter to establish that pain rehabilitation was available to Cottrell and that he had not mitigated his damages by taking advantage of that treatment. However, through Cottrell's own testimony, and the testimony of his treating physician, the jury had already been made aware of the availability of the treatment, the fact that it had been prescribed by Dr. Tacke, and the fact that plaintiff had not yet taken advantage of it. Any further evidence to that effect would have been cumulative. It is not error for the district court to exclude cumulative evidence. Neither were any substantial rights of defendant adversely affected by exclusion of such evidence. Rule 103, M.R.Evid., provides in relevant part that "[e]rror may not be predicated upon a ruling which admits or

12

excludes evidence unless a substantial right of the party is affected . . . ."

We hold that the District Court did not err by excluding the testimony of Judy Freeman and her letter dated April 28, 1992, for the reason that portions of her letter constituted expert opinion which had not been properly identified prior to trial, and that the only remaining purposes for which her testimony or correspondence were admissible were cumulative of information that had already been presented to the jury. Therefore, neither were defendant's substantial rights affected by exclusion of the evidence. The District Court's exclusion of Nurse Freeman's testimony and her correspondence is affirmed.

### III.

Did the District Court err when it rejected two of defendant's proposed jury instructions which pertained to contributory negligence and limitation of defendant's liability for plaintiff's pre-existing injuries?

Defendant offered its proposed instructions numbered 31 and 44A which were not given by the District Court. Its proposed Instruction No. 31 was as follows:

> Where an employee knowingly exposes himself to conditions of employment while aware of an illness or disability which makes those conditions unsafe to him, or where an employee has the possibility of securing relief from unsafe conditions by informing his superiors of them, or continues to work without doing so, he may be found to be contributorily negligent.

Defendant's proposed Instruction No. 44A provided as follows:

13

You are further instructed that the plaintiff may not recover damages which are attributable to his pre-existing injuries in 1980, and the subsequent surgeries performed by Dr. Johnson and Dr. Vincent in 1981 and 1982 respectively. These injuries are not compensable in this action and shall not be considered by you in your deliberations.

On appeal, defendant contends that the District Court erred by refusing to give its proposed Instruction No. 31 because contributory negligence is a defense to Cottrell's claim pursuant to 45 U.S.C. § 53 (1988), and its theory of contributory negligence was based on the fact that Cottrell continued to work after his back began to hurt, and therefore, increased the risk of his ultimate injury. Defendant contends that it was entitled to such an instruction pursuant to the decision of an intermediate appellate court in Missouri in *Conley v. BN Railroad Company* (Mo. App. 1988), 765 S.W.2d 272, and pursuant to a Fifth Circuit Court decision in *Savoie v. Otto Candies, Inc.* (5th Cir. 1982), 692 F.2d 363.

Defendant contends that the District Court erred by refusing to give its proposed Instruction No. 44A so that the jury would not confuse Cottrell's right to compensation in this case with damages which resulted from his earlier injury.

We have held that when we review a district court's refusal to give an offered jury instruction, the following rules apply:

It is not reversible error for a trial court to refuse an offered instruction unless such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him. *Payne v. Sorenson* (1979), 183 Mont. 323, 599 P.2d 362, 36 St. Rep. 1610.

A party is not prejudiced by a refusal of his proposed instructions where the subject matter of the

14

> instruction is not applicable to the pleadings and facts, or not supported by the evidence introduced at trial, <u>or the subject matter is adequately covered by other instructions submitted to the jury</u>. *Payne v. Sorenson, supra; Brown v. North American Mfg. Co.* (1978), 176 Mont. 98, 576 P.2d 711; *Butler Mfg. Co. v. J & L Implement Co.* (1976), 167 Mont. 519, 540 P.2d 962. [Emphasis added].

*Associated Agency of Bozeman, Inc. v. Pasha* (1981), 191 Mont. 407, 413, 625 P.2d 38, 42.

In this case, the substance of defendant's proposed instructions numbered 31 and 44A was covered in other instructions given by the District Court which were less argumentative.

In the District Court's Instruction No. 21, the jury was told that:

> If the railroad carries its burden in proving that Vern Cottrell was contributorily negligent and that this caused some or all of his injuries, his total damages shall be reduced by an amount equal to the percentage of negligence charged to him when compared to the amount of negligence charged to the railroad.

The jury was fully instructed on the meaning of negligence, and based on these instructions, the railroad capably argued that Cottrell was contributorily negligent by continuing to work while in pain without informing his supervisors.

Likewise, the jury was instructed that Cottrell could not recover for injuries that occurred prior to the injury which was the subject of his complaint. In the District Court's Instruction No. 24, the jury was told that:

> If you find that plaintiff was suffering from a pre-existing condition at the time he incurred injuries in the accident or accidents in question, he is not entitled to recover damages for the pre-existing condition.

15

The District Court's Instruction No. 24 was simply another way of saying the same thing proposed by defendant in its proposed Instruction No. 44A.

Based on this instruction, defendant's attorneys did effectively argue, without objection, that Cottrell could not recover damages for injuries attributable to his pre-existing injuries or prior surgeries.

We conclude that defendant's proposed instructions numbered 31 and 44A were adequately covered by other instructions submitted to the jury, and therefore, defendant's substantial rights were not affected by the District Court's refusal of defendant's proposed instructions.

IV.

Did the District Court err when by failing to rule on defendant's motion to amend the judgment, it declined to offset from the judgment monies paid to plaintiff by defendant and from other sources prior to trial?

The jury returned its verdict on June 1, 1992, finding that defendant was negligent, its negligence caused Cottrell's injuries, Cottrell was not negligent, and his damages were in the amount of $1,362,236. The jury verdict was unanimous.

During the trial, outside the presence of the jury, the attorneys for defendant asked if it could be stipulated that evidence of the amount to which it was entitled as an offset against any judgment collected by Cottrell for advance payments made by defendant, and for medical bills, could be proven at a

16

post-trial hearing. The District Court agreed that it could, and Cottrell's attorney stated that he had no objection. However, on a subsequent occasion prior to the jury verdict, Cottrell's attorney pointed out that there was no evidence of medical expense and Cottrell was making no claim for past or future medical expenses, and therefore, it would be inappropriate to offset those amounts against any judgment recovered. There was no objection to that statement by defendant's attorneys.

On June 12, 1992, defendant filed its motion to alter or amend the District Court's judgment, and in the alternative, for a new trial. The bases asserted for a new trial were those issues previously discussed in this opinion. However, defendant also sought to have the judgment amended to provide that payments advanced by defendant to Cottrell, payments advanced by the Railroad Retirement Board, supplemental sickness benefits received by Cottrell, and medical expenses paid on Cottrell's behalf by his insurer be offset from the amount of the judgment entered on his behalf.

In opposition to defendant's motion to amend the judgment, Cottrell's attorney pointed out that his stipulation during trial applied to only those offsets applied by law and which were part of the actual damages awarded. He contended that defendant was not entitled to an offset for medical expenses paid by Cottrell's insurer, because no medical expenses were sought nor recovered. He also contended that defendant was not entitled to an offset for amounts previously advanced for wage loss because the general

17

verdict form did not distinguish the nature of damages awarded to Cottrell. Cottrell's attorneys pointed out that he submitted a verdict form which would have itemized the nature of damages awarded by the jury, but that form was objected to by defendant, and therefore, it was impossible for the District Court to determine the exact nature of damages awarded by the jury.

The District Court did not rule on defendant's post-trial motion. It was, therefore, deemed denied, and this appeal was taken.

On appeal, defendant cites written agreements by Cottrell to the effect that money advanced would be deducted from any ultimate settlement or judgment paid to him. It cites the stipulation entered into during the time of trial, and it relies on our prior decision in *Kalanick v. Burlington Northern* (1990), 242 Mont. 45, 788 P.2d 901, where we held that the railroad was entitled to have the judgment entered against it offset by the amount which it had previously advanced to the injured employee in that case. We also held in *Kalanick* that the railroad was entitled to an offset for sickness payments made to its employee pursuant to a collective bargaining agreement adopted by the employee's union.

In response to defendant's argument on appeal, Cottrell concedes that defendant has a right to an offset for sickness benefits previously advanced in the amount of $6492.27, but denies that it has a right to any offset for wage benefits advanced because the general nature of the verdict form makes it impossible

18

to determine what, if any, amounts were awarded by the jury as damages for wage loss.

We note that, while Cottrell is correct that due to defendant's objection, an exact apportionment of the jury's verdict between general damages and wage loss cannot be made, the jury's verdict was for an amount in excess of $1.3 million. Cottrell claimed wage loss in the amount of $862,230, and general damages of from $700,000 to $1,000,000 for pain and suffering. By logical deduction, at least $300,000 of Cottrell's recovery had to be compensation for wage loss.

Therefore, we conclude that the District Court erred by refusing to offset the judgment entered against defendant by those amounts previously advanced for wages and supplemental sickness benefits, other than those benefits paid for medical expenses. We conclude that since compensation for medical expenses was not claimed by Cottrell, defendant is not entitled to an offset against the judgment for those amounts. We remand to the District Court for a determination of the exact amount of offsets to which defendant is entitled. We otherwise affirm the jury's verdict and the judgment of the District Court entered pursuant to that verdict.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

20

November 2, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

J. Michael Young
Jardine, Stephenson, Blewett & Weaver
P. O. Box 2269
Great Falls, MT 59403

Russell D. Yerger
Kroschel & Yerger
2825 Third Ave. N., Ste 607
Billings, MtT 59101

Erik Thueson
Thueson Law Offices (Hand delivered)
P. O. Box 535
Helena, MT 59624

Dennis P. Conner
Attorney at Law
P. O. Box 3028
Great Falls, MT 59403-3028

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy