**NO. 95-286**

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF
MARY ANN ZUELKE, now known as
MARY ANN BARBIE-RICE,

       Petitioner and Appellant,

   and

GORDON STEPHEN ZUELKE,

       Respondent and Respondent.

**FILED**

DEC 14 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         John Bobinski, Attorney at Law, Helena, Montana

      For Respondent:

         Dennis G. Loveless, Attorney at Law, Helena, Montana

                Submitted on Briefs:  November 16, 1995
                          Decided:  December 14, 1995

Filed:

                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Mary Ann Barbie-Rice appeals from the April 18, 1995, Order Implementing Equal Custody of the First Judicial District Court, Lewis and Clark County. We affirm.

We restate the issues raised on appeal as follows:

1. Did the District Court err in implementing an equal custody arrangement of the parties' child?
2. Did the District Court abuse its discretion in allowing an expert witness to testify and to give his custody recommendations and in not granting a continuance?

This case arises out of a protracted custody and visitation dispute between Mary Ann [Zuelke] Barbie-Rice (Mary Ann) and Gordon Stephen Zuelke (Gordon). One child, Ashley Annamarie Zuelke, was born to the parties on August 22, 1987. Mary Ann and Gordon's marriage was dissolved in 1990. In its May 30, 1990, Findings of Fact, Conclusions of Law and Decree, the District Court placed Ashley in the joint custody of both parties. The District Court adopted its "Initial Residential Plan" and noted that additional contact with Gordon would be phased in over time. Further, the District Court ordered that a determination of whether equal time with each party was in Ashley's best interest would be made when she reached school age.

In May of 1992, a hearing was held and, upon the recommendation of Dr. Black, a Licensed Clinical Psychologist who had evaluated Ashley and had been involved since the 1990 Decree, the District Court phased in additional contact with Gordon. The District Court ordered that "[i]f either party has concerns with . . . the implementation of a plan to permit Ashley to spend an equal

2

amount of time with both parents, they are to discuss the same with Dr. Black." Further, the District Court noted that serious tension and hostility between Mary Ann and Gordon was having an adverse impact on Ashley.

Thereafter, in November of 1993, Gordon asked Dr. Black to start a phase-in program for equal time custody. In December of 1994, Dr. Black mailed a written report to the District Court recommending equal custody with each parent having alternating six-month periods. A hearing was held on February 28, 1995, and on April 18, 1995, the District Court ordered that equal time custody be implemented. Mary Ann appeals from this order.

1. Did the District Court err in implementing an equal custody arrangement of the parties' child?

In reviewing a district court's child custody determination, we determine whether the district court's findings are clearly erroneous. In re Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. The findings of fact must be based on substantial credible evidence, and the court's decision will be upheld unless a clear abuse of discretion is shown. Marriage of Dreesbach, 875 P.2d at 1021; In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723.

In its May 30, 1990, Findings of Fact, Conclusions of Law and Decree, the District Court stated that, as time goes by, additional contact with Gordon should be phased into the custody arrangement. The court ordered that "the parties shall work with the counselor to develop a plan to permit Ashley to spend more time with Gordon." In its finding number 11, the court stated that:

3

It is in the best interest of Ashley that the above plan, or some form of it, remain in effect until Ashley reaches school age, and that the parties at that time renegotiate a plan to permit Ashley to spend an equal amount of time with her father. When Ashley reaches school age, the parties shall consult with Dr. Black, or another qualified professional. The consultation shall have as its goal the determination of whether equal time with both parents is in the child's best interests. Equal time shall be ordered if Dr. Black, or another qualified professional, feels that equal time is in the child's best interests.

This 1990 provision contemplated the phase-in which later occurred in this case. Dr. Black made a recommendation that equal custody was in Ashley's best interest and the District Court implemented that recommendation. In its April 18, 1995 order, the court stated that "[i]t is clear that since June 1 of 1990 this Court has contemplated that the parties would be moving to an equal custody plan with their minor child."

Mary Ann argues that the District Court order implementing equal custody was a change in her primary residential custody and, as such, the prerequisites of § 40-4-219, MCA, had to be satisfied. Further, Mary Ann asserts that this Court's holding in In re Marriage of Johnson (1994), 266 Mont. 158, 879 P.2d 689, is controlling and requires that the jurisdictional requirements set forth in § 40-4-219, MCA, be satisfied when the effect of the order is to substantially change the child's primary residence. The District Court found that:

This is not a situation where a change in custody was not contemplated by this Court from the entry of its original Order in June of 1990. All the parties were put on notice at that time that we were working toward as equal custody arrangement. This is not a situation where one parent is seeking to significantly alter a custody arrangement. This Court has specifically adopted a

4

custody plan in its decision of June 1, 1990, and that plan included an eventual move to equal custody.

The fact that equal custody had been contemplated since the original Decree in 1990 supports the District Court's conclusion that the Order Implementing Equal Custody was precisely that--implementation of a previous order--not a modification of custody.

The record reflects that the District Court carefully considered the best interests of the child, as set forth in § 40-4-212, MCA, in implementing the equal custody arrangement. The court noted that "Mary Ann exudes anxiety and that feeling is picked up by the child" and that the equal custody implementation would benefit Ashley's mental health development. We conclude that the District Court's findings are not clearly erroneous and that the District Court did not abuse its discretion in implementing equal custody.

In addition, Mary Ann asserts that the District Court erred in not requiring Gordon to file an affidavit supporting what she termed his "modification of custody," pursuant to § 40-4-220, MCA. However, the District Court determined, and we agree, that § 40-4-220, MCA, is inapplicable in the instant case. The District Court's implementation of joint custody was not a modification, rather, it was the implementation of the 1990 Decree. Thus, compliance with § 40-4-220, MCA, was not necessary.

2. Did the District Court abuse its discretion in allowing an expert witness to testify and to give his custody recommendations and in not granting a continuance?

Mary Ann argues that the District Court erred in allowing Dr. Black to testify at the hearing. She alleges that Dr. Black had a

5

"built in bias" in recommending equal custody and that this bias compromised his impartiality in the evaluation.  In reviewing a district court's ruling on the qualifications and competency of an expert witness to express an opinion we have held that:

> [T]he determination of the qualification and competency of expert witnesses rests largely within the trial judge, and without a showing of abuse of discretion, such determination will not be disturbed.

Cottrell v. Burlington Northern R. Co. (1993), 261 Mont. 296, 301, 863 P.2d 381, 384 (citing Foreman v. Minnie (1984), 211 Mont. 441, 445, 689 P.2d 1210, 1212).  Mary Ann asserted her objection to Dr. Black's testimony both to Dr. Black during his evaluation, and to the District Court.  However, the court found that Dr. Black's recommendation of equal custody should be implemented and that equal custody was in Ashley's best interest.  We cannot say that the discretionary decision to permit Dr. Black to testify was an abuse of discretion, thus, the District Court's determination will not be disturbed.

Finally, Mary Ann asserts that she should have been granted a continuance in order for her to obtain an expert of her own choosing.  In reviewing discretionary trial court rulings we determine whether the district court abused its discretion. May v. First Nat'l Pawn Brokers, Ltd. (Mont. 1995), 890 P.2d 386, 388, 52 St.Rep. 111, 112.  The District Court noted that Dr. Black had an ongoing involvement in the case, and had initially been involved at Mary Ann's request.  The court found that these parties had already seen numerous counselors.  Further, the court noted that it had previously expressed its concern, in its June 1992 order, that too

6

many counselors had been involved in the case. The court stated that "[c]onstantly involving this child with new counselors and in custody fights is not helping any of these parties." Thus, based on the District Court's findings, its 1992 order, its admonition of the parties of the detrimental nature of additional custody disputes, and Dr. Black's testimony, we cannot say that the District Court abused its discretion in refusing to grant the continuance in order to allow Mary Ann to secure the testimony of an additional expert witness.

Affirmed.

_____
Justice

We concur.

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler did not participate in this case.

7

Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's opinion on the first, and dispositive, issue in this case. I would reverse and remand for such further proceedings as may be appropriate.

The threshold issue in this case is whether the District Court's April 18, 1995, order for an equal time custody arrangement is a modification of its earlier custody determination or a mere implementation of an earlier order. If the order at issue is a modification of a prior custody decree which effects a substantial change in the child's primary residence, it is clear that the jurisdictional prerequisites of § 40-4-219, MCA, must be met (In re Marriage of Johnson (1994), 266 Mont. 158, 166, 879 P.2d 689, 694), and is undisputed that those requirements were not considered by the District Court here. If, on the other hand, the order merely implements a prior custody decree, then the District Court need consider only the "best interest" test contained in § 40-4-212, MCA.

The Court concludes that the District Court's April 18, 1995, order did not modify an earlier custody order, but merely implemented such an order. It is my view that the Court fails to read the earlier order carefully, and then to apply the law to that order. Doing so mandates a reversal of the District Court.

Mary Ann and Gordon's marriage was dissolved by decree dated May 30, 1990. The District Court made extensive findings of fact and conclusions of law with regard to distribution of the marital

a

estate, child custody and child support. Only the findings and conclusion relating to child custody are relevant here.

Mary Ann and Gordon's minor daughter Ashley was just over two years old at the time of the dissolution. The parties agreed, and the District Court found, that it was in Ashley's best interest to be placed in the joint legal custody of her parents, with Mary Ann designated as the primary residential custodian.

Ashley had been traumatized by the circumstances surrounding the dissolution of her parents' marriage and counseling was necessary to help her deal with the situation. Dr. Hugh Black had been counseling Ashley and presented a two-phase residential plan for the court's consideration. In Finding of Fact Number 9, the District Court set out the "Initial Residential Plan." During the period of the initial plan, Ashley would continue to receive mental health counseling and Gordon's visitations with Ashley during that time were severely limited.

The District Court also set out in Finding of Fact Number 9 the "Phase-in of Permanent Residential Plan." Under the permanent plan, Gordon had visitation on alternating weekends and school holidays and on two evenings each week; each party was entitled to spend one-half of the summer vacation with Ashley.

In Finding of Fact Number 11, the District Court stated that, at the time Ashley reached school age, the parties should consult with Dr. Black (or another qualified professional); the consultation "shall have as its goal a determination of whether equal time with both parents is in the child's best interests."

9

The finding went on to state that an equal time custody arrangement would be ordered if, at that time, a qualified professional felt that it was in Ashley's best interests.

The District Court's May 30, 1990, decree contained only one conclusion of law relating to child custody. Conclusion of Law Number 3 states: "It would be in the best interest of the minor child if her custody and visitation were regulated as set forth in Finding of Fact Number 9 above." As outlined above, that finding ends with a residential plan which, by its terms, is denominated "permanent." Nothing in the District Court's conclusions refers to either the "goal" relating to equal time which is contained in Finding of Fact Number 11 or the potential referenced there for redetermining Ashley's best interests at some future time.

Thus, it is clear that the District Court's May 30, 1990, custody determination ends at the point where the "Permanent Residential Plan" has been phased in. At that point, Mary Ann remained Ashley's primary residential custodian, with liberal visitation by Gordon.

Both statute and case law are clear with regard to modifying a prior custody decree. By its terms, § 40-4-219, MCA, vests discretion in a district court to modify a prior custody decree, but only if statutory requirements are met. A "prior custody decree" is "a custody determination contained in a judicial decree or order . . . ." Section 40-4-219(7), MCA (emphasis added). We consistently have held that the § 40-4-219, MCA, requirements are jurisdictional prerequisites to modification of a custody decree.

10

See, e.g., Marriage of Johnson, 879 P.2d 689, and cases cited therein.

Nor can it be disputed that a change from Ashley residing primarily with Mary Ann to an "equal time" custody arrangement where Ashley would reside with Gordon for six months of the year is a significant change in a child's living arrangements. Indeed, Dr. Black testified in this case that the change proposed by Gordon--and recommended by Dr. Black--was a fairly radical change in the existing custody arrangement.

As we stated so recently in Marriage of Johnson, motions to modify child custody provisions in a dissolution decree "which have the effect of substantially changing the primary residence" of a child must satisfy the jurisdictional requirements contained in § 40-4-219, MCA. Marriage of Johnson, 879 P.2d at 694. The legislature's rationale for imposing such requirements was to provide for the continuity and stability of a child's living arrangements. Marriage of Johnson, 879 P.2d at 692.

The permanent residential plan adopted as the District Court's conclusion of law in 1990 is the "custody determination" made by the court. Whatever the effect of the court's finding relating to a possible equal time custody arrangement in the future, it cannot constitute a "custody determination." A custody "determination" can be made only by a court and only after consideration by the court of "all relevant factors." Section 40-4-212(1), MCA. Under § 40-4-219, MCA, and Marriage of Johnson, the jurisdictional prerequisites to modifying the 1990 custody decree clearly must be

11

met in this case before a modification effectuating equal time custody can be made. Just as clearly, those prerequisites were not even considered by the District Court.

The Court follows the District Court's lead in attempting to distinguish this case from Marriage of Johnson by relying on the fact that the District Court "contemplated" a future equal time custody arrangement back in 1990. It quotes at length from the District Court's Finding of Fact Number 11 to that effect. "Contemplating" something which might occur a number of years in the future cannot be said--even as a matter of logic--to "determine custody" for that future time. Indeed, such a "contemplation" cannot constitute a "custody determination" given the language in § 40-4-212, MCA. The same is true of any "goal" or "plan" contained in Finding of Fact Number 11.

Moreover, even if, at the time of the original decree, the District Court envisioned being able to make substantial changes in Ashley's primary residence in the future on the basis of a "best interest" analysis, the law changed in that regard with our decision in Marriage of Johnson on August 12, 1994. Like this Court, the District Court was required to follow current law at the time of its 1995 decision changing Ashley's physical custody to an equal time custodial arrangement.

The Court's decision in this case gives district courts carte blanche to make "custody determinations" in derogation of the requirements of § 40-4-212, MCA. It also nullifies our effort in Marriaae of Johnson to give meaning to the legislature's

12

requirements for modifying a prior custody decree. District courts are now authorized to include a variety of future-oriented provisions in original decrees to preempt the necessity of making an appropriate decision about modifying custody in the future under legislatively required, and <u>Marriase of Johnson</u> mandated, jurisdictional prerequisites. Stability and continuity in a child's living arrangements will be precluded at the outset by "findings" which cannot properly be made at that time. I cannot agree.

I dissent.

_____
                    Justice

Justice James C. Nelson joins in the foregoing dissent of Justice Karla M. Gray.

_____
                    Justice

December 14, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John Bobinski
Attorney At Law
Box 5117
Helena MT 59604-5117

Dennis G. Loveless
Attorney At Law
Box 225
Helena MT 59624-0225

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy